MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
GENEVIEVE K. GUERTIN (State Bar No. 262479)
T. KENNEDY HELM (State Bar No. 282319)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California 94612
Telephone: (510) 452-5500
Fax: (510) 452-5510

Attorneys for Plaintiff
HARRISON LUTHER ORR

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRISON LUTHER ORR, Individually, <br><br> Plaintiff, <br><br> vs. <br><br> CALIFORNIA HIGHWAY PATROL, a public entity; STATE OF CALIFORNIA, a public entity; CALIFORNIA HIGHWAY PATROL OFFICERS BRAME, PLUMB, and DOES 1-10, individually, <br><br> Defendants. | Case No. 2:14-cv-0585-WBS-EFB <br><br> **PLAINTIFF'S PRE-TRIAL BRIEF RE: QUALIFIED IMMUNITY** <br><br> Trial Date: June 2, 2015 <br> Time: 9:00 a.m. <br> Place: Courtroom 5, 14th Floor, USDC |

# DEFENDANTS BRAME AND PLUMB DO NOT HAVE QUALIFIED IMMUNITY FOR THEIR VIOLATION OF CLEARLY ESTABLISHED RIGHTS

The affirmative defense of qualified immunity has a two-step analysis. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  Taking the facts in the light most favorable to the plaintiff, the Court may choose to first determine whether the violation of a constitutional right could be established, or it may choose to first decide whether that right was clearly established at that time under the circumstances.  *Id.*  "[T]ypically, taking the facts in the light most favorable to the plaintiffs, we first ask whether those facts demonstrate that the defendant police officers violated one or more of the plaintiffs' constitutional rights."  *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168 (9th Cir. 2013).

The Ninth Circuit recently explained, "[t]o complete the second step of the qualified immunity analysis, we place our hypothetical reasonable officer in the same situation as the defendant police officers, and then ask whether the reasonable officer also would have committed the act that the plaintiffs contend is unconstitutional.  If the answer is 'yes,' the defendant officers are entitled to qualified immunity.  If the answer is 'no,' the plaintiffs' claim against the defendant officers may proceed."  *Johnson*, 724 F.3d at 1168 (internal citations omitted).

This Court has recognized, "Defendants bear the burden of establishing qualified immunity."  (Doc. 79, MSJ Order, p. 17, *citing Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005)).  *See also, Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1997) ("it is the defendants' burden to show that a reasonable officer could have believed, in light of the settled law, that he was not violating a constitutional or statutory right").

**1.    At or After Trial, the Court Must Determine the Purely Legal Question of Whether the Law Was Clearly Established -- and Special Interrogatories to the Jury Are Improper Where the Jury's Liability Verdict Necessarily Implies Facts that Would Render the Defendants' Conduct Unlawful under Clearly Established Law.**

In the Ninth Circuit, qualified immunity at trial is disfavored, may only be considered in a Rule 50 motion, and special factual interrogatories to the jury generally are inappropriate.  *Tortu v. Las Vegas Metro. Police Dep't.*, 556 F.3d 1075, 1085 and n.9 (9th Cir. 2009).  The *Tortu* Court

explained, at trial, qualified immunity must only be addressed in a Rule 50 motion, either before or after a jury verdict: "As a question of law, the second part of this analysis, when brought at this late stage, is an issue for a judgment as a matter of law under Rule 50(a) and (b)." 556 F.3d at 1085. Because step two of the qualified immunity analysis "is solely a question of law for the judge," **the district court properly declined a jury instruction on qualified immunity**. *Id.* [1]

The Supreme Court also has held that where triable issues of fact preclude the granting of qualified immunity before trial, then if the requirements of Rule 50 are met, qualified immunity may be considered again after trial as part of a Rule 50 motion. *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011) ("After trial, if defendants continue to urge qualified immunity, the decisive question, ordinarily, is whether the evidence favoring the party seeking relief is legally sufficient to overcome the defense. *See* Fed. Rule Civ. Proc. 50(a) and (b)"). Because the defendants in *Ortiz* failed to make a proper motion for Judgment as a Matter of Law before the verdict under Rule 50(a), they were deemed to have waived any post-verdict qualified immunity defense that turned on disputed facts. *Id.*

In the Ninth Circuit, special factual interrogatories to the jury are neither necessary nor appropriate where the implicit factual findings supporting the jury verdict show that the defendant violated a clearly established right. *A.D. v. California Highway Patrol*, 712 F.3d 446 (2013) (once jury found that defendant officer violated due process right when he acted with a purpose to cause death unrelated to a legitimate law enforcement purpose, court was "essentially compelled" to deny qualified immunity, as that right was clearly established); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir. 2008), *cert. denied*, 129 S.Ct. 1995 (2009) (under deferential Rule 50 standard, where there was sufficient evidence for a jury to find that defendant officers arrested plaintiff without probable cause, defendants were not entitled to qualified immunity as a matter of law).

---

[1] The Ninth Circuit does not propose any model jury instruction for qualified immunity. *See,* Ninth Circuit Model Civil Jury Instruction 9.26, Comment: "The committee has not formulated any instructions concerning qualified immunity because most issues of qualified immunity are resolved before trial." *Id. See also, Tortu*, 556 F.3d at 1085 (noting that the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation").

The Federal Judicial Center publication, Martin A. Schwartz, Fed. Judicial Ctr. (FJC), *Section 1983 Litigation* 158 (2014), at p. 158, describing varying practices among all circuits, states, "[i]t may be proper" for a district court either to instruct the jury on qualified immunity [which is clearly disfavored in the Ninth Circuit; *see Tortu, supra*.] or "submit the factual issues that are material to qualified immunity to the jury by special verdicts," while reserving step two for the court based on the jury's answers to special interrogatories.  For those general practices, the FJC guide cites to many out-of-circuit cases, but only to *A.D., supra.,* and *Torres, supra.*, from the Ninth Circuit, and neither of those cases apply those practices in this Circuit.

There were no special interrogatories given to the juries in either *A.D.* or *Torres*.  In fact, *A.D.* followed and applied *Tortu*, holding again that at trial, qualified immunity must be assessed in the context of a Rule 50 motion.  *A.D.*, 712 F.3d at 452, n. 2.  Reaffirming that as in all Rule 50 motions, either before or after verdict, all facts and inferences must be construed in favor of the non-movant and in favor of the verdict, *A.D.* noted, "[d]eference to the jury's view of the facts persists throughout each prong of the qualified immunity inquiry."  *A.D.*, 712 F.3d at 456, *citing Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 528 (1st Cir. 2009).  The *A.D.* Court simply reviewed the facts that could have supported the verdict and denied the defendants qualified immunity accordingly:

> Further, because we are confined to the jury's factual finding that Markgraf acted with a purpose to cause Eklund's death unrelated to any legitimate law enforcement objective, we are essentially compelled to deny Markgraf qualified immunity--it would be "clear to a reasonable officer" that killing a person with no legitimate law enforcement purpose violates the Constitution.
>
> \*      \*      \*
>
> Therefore, we affirm the district court's denial of Markgraf's renewed motion for JMOL. The jury reasonably found that Markgraf shot Eklund with a purpose to harm unrelated to the legitimate law enforcement objectives of arrest, self-defense, or defense of others. It was clearly established before their encounter that such conduct violated Plaintiffs' substantive due process rights. Therefore, Markgraf is not entitled to qualified immunity.

712 F.3d at 454, 458 (citations omitted).

Similarly, in *Torres*, where the Ninth Circuit reversed a Rule 50 grant of JMOL to the defendants before that case had even been submitted to the jury, the Court held that because there

1  were sufficient facts for a jury to find that defendants lacked probable cause for an arrest, and the

2  law requiring probable cause was clearly established, the defendants were not entitled to qualified

3  immunity "as a matter of law."  548 F.3d at 1211-12.  Again, no special interrogatories were

4  required or even suggested.  *Id*.  The *Torres* Court also noted that "the reasons for the existence of

5  the qualified immunity doctrine 'do not suggest that a *judicial* determination at [the trial] stage is

6  necessarily better than a jury verdict.'"  548 F.3d at 1211-12, *quoting Sloman v. Tadlock*, 21 F.3d

7  1462, 1468 (9th Cir. 1994) (emphasis in original).  "Indeed, we have explained that 'sending the

8  factual issues to the jury but reserving to the judge the ultimate "reasonable officer" determination

9  leads to serious logistical difficulties.'"  *Id*.

10        The Ninth Circuit discourages special factual interrogatories due to the confusion they can

11  create both with the jury and on appeal.  *Ayuyu v. Tagabuel*, 284 F.3d 1023, 1025 (9th Cir. 2002).

12  Where the jury in a police misconduct case had been given a series of special interrogatories

13  tracking the allegations in the complaint, the Court wrote, "[t]rue to the reputation of special

14  interrogatories in tort cases as the darling of the insurance industry, the verdict form created more

15  legal questions than the pleadings and evidence had presented."  *Id*.

16        Asking the jury to decide special interrogatories concerning discrete facts undermines the

17  "totality of the circumstances" test by which courts and juries must assess the objective

18  reasonableness of arrests and uses of force under the Fourth Amendment:

19  
20  > When one picks and chooses a few questions to pose to a jury to ferret out historical facts, staying away from asking the broader question of what constitutes reasonable behavior under those facts, one cannot help but focus attention on some events to
21  > the diminution or exclusion of others. In short, a totality-of-the-circumstances test is replaced by a test focusing on those few circumstances featured in the questions a
22  > court is able and willing to articulate.

23  *Curley v. Klem*, 499 F.3d 199, 212 (3rd Cir. 2007).

24        Thus, in another Fourth Amendment case, this time based on an excessive force claim, the

25  Ninth Circuit reversed a district court's grant of JMOL for the defendants after verdict, holding that

26  the defendant officers were not entitled to qualified immunity because based on the **"factual**

27  **findings the jury must have made to reach its verdict,"** those defendants violated clearly

28

established law.  *Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1147-48 (9th Cir. 1996), *cert. denied* 519 U.S. 1009 (1996).  Again, without any special interrogatories, the Ninth Circuit reviewed the post-verdict facts in the light most favorable to the plaintiff and the verdict, and measured such facts against clearly established Fourth Amendment law.

Even in other circuits that may submit special interrogatories to the jury concerning factual issues related to qualified immunity, that procedure is limited to "exceptional circumstances."  *See, Keylon v. City of Albuquerque*, 535 F.3d 1210, 1217-18 (10th Cir. 2008) ("we have recognized that *in exceptional circumstances* historical facts may be so intertwined with the law that a jury question is appropriate as to whether a reasonable person in the defendant's position would have known that his conduct violated that right.") (emphasis in original); *McKenna v. Edgell*, 617 F.3d 432 (6th Cir. 2010) (where qualified immunity turned on a single, discrete factual issue of whether defendants officers were acting as law enforcement or as medical responders, that question was properly submitted to the jury); *Curley*, 499 F.3d at 211 (3rd Cir. 2007) ("When the ultimate question of the objective reasonableness of an officer's behavior involves tightly intertwined issues of fact and law, it may be permissible to utilize a jury in an advisory capacity, … but responsibility for answering that ultimate question remains with the court.").

In the Ninth Circuit, however, qualified immunity is assessed at trial only in the context of a Rule 50 motion after verdict, and the second step is purely a question of law for the court to decide based on "factual findings the jury must have made to reach its verdict."  *Acosta, supra.* (no qualified immunity based on jury's verdict of excessive force); *Torres, supra.* (no qualified immunity based on facts from which jury could have found arrest was without probable cause); *A.D., supra.* (no qualified immunity based on jury's verdict that defendant used deadly force without a legitimate law enforcement purpose); *Sloman,* 21 F.3d at 1468-69 (no qualified immunity based on jury's verdict that defendant arrested plaintiff in retaliation for political views).  In this circuit, the unlawfulness of officers' use of excessive force, or arrest without probable cause, is clearly established, just as this Court already found in reviewing the factual findings that a reasonable jury could make in this case.  (MSJ Order, Doc. 79, pp. 16-21, 27-29).

### 2. It Was Clearly Established By the Time of this Incident that the Use of Excessive Force, or Arrest without Probable Cause, under the Circumstances of this Case, Were Unlawful

When the district court decides the second step of qualified immunity after a jury verdict, that must be done "giving significant deference to the jury's verdict," considering all facts in the light most favorable to the plaintiff and all substantial evidence and factual inferences that could support the verdict as required by Rule 50. *A.D.*, 712 F.3d at 453, 456 ("[d]eference to the jury's view of the facts persists throughout each prong of the qualified immunity inquiry").[2]

Just last term, the Supreme Court reaffirmed the similar qualified immunity standard at summary judgment, reversing a finding of qualified immunity to police officers, because the Fifth Circuit "failed to view the evidence at summary judgment in the light most favorable to [the Plaintiff], and for "failing to credit evidence that contradicted some of its key factual conclusions." *Tolan v. Cotton*, __U.S.__, 134 S.Ct. 1861, 1866 (2014).[3]

To overcome qualified immunity, the exact same violation need not have been previously held unlawful; rather, the contours of the right must be sufficiently clear so that, in light of preexisting law, the unlawfulness of the actions is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A defendant is not entitled to qualified immunity merely because no prior case

---

[2] In *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150-51 (2000), the Supreme Court noted the standards for motions for summary judgment and for judgment as a matter of law (JMOL) are the same:

> [T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. [ ] Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. [ ] Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.

[3] Even when considering a defendant's qualified immunity claim in the context of a plaintiff's motion for partial summary judgment, the court must construe the facts in the light most favorable to the plaintiff. *Beecham v. City of West Sacramento*, No. S-07-1115 JAM EFB, 2008 U.S. Dist. LEXIS 85126, at *27 (E.D. Cal. Oct. 22, 2008) (Judge John Mendez denied qualified immunity to defendants where plaintiffs had moved for partial summary judgment of claims for false arrest and excessive force).

prohibits the precise conduct at issue. *Young*, 655 F.3d at 1167; *Deorle*, 272 F.3d at 1285–86. "[A]ny requirement that facts of previous cases be "materially similar" to the case at issue is a "rigid gloss on the qualified immunity standard" that is "not consistent with our cases." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The "salient question" is whether the state of the law at the time gave the defendant "fair warning" that his alleged conduct was unconstitutional. *Tolan*, 134 S.Ct. at 1866 (citing *Hope,* 536 U.S. at 739).

Additionally, when an officer violates a policy or training of his department, he is on notice that his conduct is unreasonable and is not entitled to qualified immunity. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) (police department's "training materials" relevant to whether force was unlawful and whether a reasonable officer would have been on notice); *Headwaters II*, 276 F.3d at 1131 (no qualified immunity where officers violated regional and statewide police protocol); *Young*, 655 F.3d at 1162, n. 7, 1168, n.9 (qualified immunity denied in part based on defendant's violation of California POST training standards). This Court addressed violation of such standards in its MSJ order, at pp. 18-19, and found that based on issues of fact necessary to decide Plaintiff's Fourth Amendment claims, Defendants were not entitled to qualified immunity before trial. (MSJ Order, Doc. 79, pp. 16-21, 27-29)

This Court already has noted:

> As the Supreme Court has recognized, whether the unlawfulness of certain conduct is clearly established "depends largely 'upon the level of generality at which the relevant legal rule is to be identified.'" *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). The right must be defined in a "particularized, and hence more relevant, sense," requiring a court to strike a balance between defining a right too generally so that the definition necessarily leads to the conclusion that the right is clearly established and defining the right too narrowly so that prior precedent must mirror the facts of the case in order to conclude that the right has been clearly established. *Saucier*, 533 U.S. at 202–03.

(Doc. 79, pp. 18-19).

**Unlawful Arrest.** "The Fourth Amendment right to be free from arrests without probable cause is clearly established." *Gasho*, 39 F.3d at 1438; *Beier*, 354 F.3d at 1065 ("[T]hat a police officer may arrest a suspect only if he has probable cause to believe a crime has been committed is a

bedrock Fourth Amendment precept."). *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, n.2 (9th Cir. 2011) (no objectively reasonable officer could have believed there was probable cause). "[I]n a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that **probable cause is a question for the jury**...." (Doc. 79, p. 10, citing, *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984)).

This Court defined the right to be free from unlawful arrest in this case as follows:

> Here, the issue is whether it is clearly established that an officer lacks probable cause to arrest someone for driving under the influence where there is a readily verifiable innocent explanation for symptoms of drug use. It is well established that "[t]he effect of evidence which may support, or incline toward, a finding of probable cause can, of course, be vitiated by countervailing evidence." Lopez, 482 F.3d at 1074 (citing Ortiz, 427 F.3d at 527). It was thus clearly established that even if the officers believed plaintiff was driving under the influence, they were not entitled to ignore countervailing facts that overcame this belief, including plaintiff's assertion that he had suffered from a stroke, was on medication, and the aforementioned facts suggesting plaintiff was disabled.

(Doc. 79, p. 18).

Thus, a jury verdict finding an unlawful arrest under the facts of this case – as the jury will be instructed on that claim – also would necessarily show violation of this clearly established law. This is not such a novel factual situation that existing clearly established law would not have put Defendants on notice that their conduct would violate Plaintiff's right to be free from unlawful arrest. Under the framework of a Rule 50 motion after a verdict, it should not be difficult to decide again whether or not Defendants enjoy qualified immunity for their arrest based on "factual findings the jury must have made to reach its verdict." *Acosta, supra.; A.D., supra.; Torres, supra.*

**Excessive Force.**  Similarly, it was clearly established under long-standing excessive force jurisprudence that a substantial, intermediate, injurious level of force "is permissible only when a strong government interest *compels* the employment of such force." *Tekle v. United States*, 511 F.3d 839, 844 (9th Cir. 2007). None of the *Graham* factors weigh in favor of the force Defendants used against Plaintiff. *See also, Winterrowd v. Nelson*, 480 F.3d 1181, 1186 (9th Cir. 2007) (no qualified immunity for excessive force when officers injured a non-threatening, older man with a claimed, pre-existing shoulder injury by attempting to handcuff him); *Meredith v. Erath,* 342 F.3d

1057 (9th Cir. 2003) (where suspect's alleged crimes were nonviolent, and suspect passively resisted handcuffing, there was no qualified immunity for excessive force used when officers threw suspect to the ground to handcuff her).

Relying largely on *Winterrowd*, this Court found that that case illustrated clearly established law finding force excessive under circumstances very similar to the present case.  (Doc. 79, pp. 28-29).  Again, assessing any post-verdict claim of qualified immunity under Rule 50 standards as both the Supreme Court and Ninth Circuit require, it should not be difficult to decide whether or not Defendants enjoy qualified immunity for their uses of force based on "factual findings the jury must have made to reach its verdict."  *Acosta, supra.; A.D., supra.*

### 3. Qualified Immunity Cannot Apply to State Law or ADA Claims

Qualified immunity does not apply at all to state law claims, including claims brought under California Civil Code § 52.1, that may be based on violations of federal law.  *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1246 (2007).  Plaintiff does not bring his ADA claims against the officers individually, and qualified immunity does not apply to any claims against a municipality.  *Owen v. City of Independence*, 445 U.S. 622, 650–51 (1980); *Gibson v. County of Washoe*, 290 F.3d 1175, 1186, fn 7 (9th Cir. 2002) (public entity may be liable even if officers have qualified immunity).

Respectfully Submitted,

Dated:  April 28, 2015                HADDAD & SHERWIN LLP

/s/ Michael J. Haddad
MICHAEL J. HADDAD
Attorneys for Plaintiff
Harrison Orr