1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  PETER A. MESHOT, State Bar No. 117061
   Supervising Deputy Attorney General
3  STEPHEN C. PASS, State Bar No. 131179
   Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone:  (916) 322-2558
6    Fax:  (916) 322-8288
     E-mail:  Stephen.Pass@doj.ca.gov
7  *Attorneys for Defendants State of California by and*
   *through California Highway Patrol, CHP Officer*
8  *Plumb and CHP Officer Brame*

9                IN THE UNITED STATES DISTRICT COURT

10             FOR THE EASTERN DISTRICT OF CALIFORNIA

11                      SACRAMENTO DIVISION

12

13

14  **HARRISON ORR, Individually,**            2:14-cv-585-WBS-EFB

15                              Plaintiff,    **DEFENDANTS' PROPOSED JURY
                                              INSTRUCTIONS**
16          v.
                                              Trial Date:   June 2, 2015
17  **CALIFORNIA HIGHWAY PATROL**             Time:         9:00 a.m.
    **OFFICERS BRAME, PLUMB, and DOES**       Courtroom:    5
18  **1-10, individually,**                   Judge:        The Honorable William B.
                                                            Shubb
19                              Defendants.

20

21          Defendants State of California, appearing by and through Department of California

22  Highway Patrol, CHP Officer Plumb, and CHP Officer Brame, request that the Court give the

23  following Proposed Jury Instructions not requested by Plaintiff:

24

25

26

27

28

1

## TABLE OF CONTENTS

2

**Page**

3   1.5  TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS ............................................ 2

4   9.18  PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE
            SEIZURE OF PERSON—GENERALLY ............................................................................ 3

5   9.19  PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE
            SEIZURE OF  PERSON—EXCEPTION TO WARRANT REQUIREMENT—
6           TERRY STOP.................................................................................................................. 6

7   9.20  PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE
            SEIZURE OF PERSON—PROBABLE CAUSE ARREST.................................................. 8

8   DEFENDANT'S SPECIAL INSTRUCTION 1:  DISSIPATION OF PROBABLE
9           CAUSE............................................................................................................................ 10

    9.22  PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE
10          SEIZURE OF PERSON—EXCESSIVE (DEADLY AND NONDEADLY)
            FORCE............................................................................................................................ 12

11  DEFENDANT'S SPECIAL INSTRUCTION 2:  OFFICER'S RIGHT TO USE FORCE
            TO OVERCOME RESISTANCE.................................................................................... 16

12  CACI - 1305. BATTERY BY PEACE OFFICER........................................................................ 18

13  CACI -3066. BANE ACT—ESSENTIAL FACTUAL ELEMENTS ......................................... 21

14  DEFENDANTS' SPECIAL INSTRUCTION NO. D-3 INTRODUCTORY
            INSTRUCTION TO A.D.A/R.A (MODIFIED 12.1A) .................................................... 25

15  DEFENDANTS' SPECIAL INSTRUCTION NO. 4:  UNREASONABLY MISTAKEN
            ARREST:  RESPONDEAT SUPERIOR ........................................................................ 28

16  SPECIAL INSTRUCTION NO. D-5 ........................................................................................... 30

17  DEFENDANTS' SPECIAL INSTRUCTION NO. 6................................................................... 33

18  CACI -3940 PUNITIVE DAMAGES—INDIVIDUAL DEFENDANT-TRIAL--NOT ............. 36

19

20

21

22

23

24

25

26

27

28

1

2

**1.5  TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**

      You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

3

4

5

6

      Given as Submitted _____

7

      Given as Modified_____

8

      Declined_____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### 9.18  PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE SEIZURE OF PERSON—GENERALLY

As previously explained, the plaintiff has the burden to prove that the acts of the defendant Officer Brame deprived the plaintiff of particular rights under the United States Constitution.  In this case, the plaintiff alleges the defendant deprived him of his rights under the Fourth Amendment to the Constitution when Officer Brame pulled over his vehicle, detained him for an investigation of driving under the influence of alcohol and/or drugs and arrested him for driving under the influence of drugs and for interfering with an peace officer in the performance of his duties.

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person.  In order to prove the defendant deprived the plaintiff of this Fourth Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

1.    Officer Brame seized the plaintiff's person;

2.    in seizing the plaintiff's person, Officer Brame acted intentionally; and

3.    the seizure was unreasonable.

A defendant "seizes" the plaintiff's person when he restrains the plaintiff's liberty by physical force or a show of authority.  A person's liberty is restrained when, under all of the circumstances, a reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about his business.

In determining whether a reasonable person in the plaintiff's position would have felt free to leave, consider all of the circumstances, including

1.    the number of officers present;

2.    whether weapons were displayed;

3.    whether the encounter occurred in a public or nonpublic setting;

4.    whether the officer's manner would imply that compliance would be compelled; and

5.    whether the officers advised the plaintiff that he was free to leave.

A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct.  Thus, the plaintiff must prove the defendant meant to engage in the acts that caused a seizure of the plaintiff's person.  Although the plaintiff does not need to prove the defendant intended to violate the plaintiff's Fourth Amendment rights, it is not enough if the plaintiff only proves the defendant acted negligently, accidentally or inadvertently in conducting the stop and/or investigation and/or arrest.


Given as Submitted _____

Given as Modified_____

2

1    Declined_____

2                           **Comment**

3        Use this instruction only in conjunction with the applicable elements instructions,

4    Instructions 9.2–9.7, and with an appropriate definition of an unreasonable seizure such as

5    Instructions 9.19–9.23.  Because this instruction is phrased in terms focusing the jury on the

6    defendant's liability for certain acts, the instruction should be modified to the extent liability is

7    premised on a failure to act in order to avoid any risk of misstating the law.  *See Clem v. Lomeli*,

8    566 F.3d 1177, 1181-82 (9th Cir. 2009).

9        "A 'seizure' triggering the Fourth Amendment's protections occurs only when government

10   actors have, 'by means of physical force or show of authority, . . . in some way restrained the

11   liberty of a citizen.'"  *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Terry v. Ohio*,

12   392 U.S. 1, 19 n.16 (1968)).  This may occur through coercion, physical force, or a show of

13   authority.  *United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir.1997).  A person's

14   liberty is restrained when, "taking into account all of the circumstances surrounding the

15   encounter, the police conduct would 'have communicated to a reasonable person that he was not

16   at liberty to ignore the police presence and go about his business.'"  *Florida v. Bostick*, 501 U.S.

17   429, 437 (1991) (citations omitted).  A seizure, however, "does not occur simply because a police

18   officer approaches an individual and asks a few questions."  *Bostick*, 501 U.S. at 434.

19       In determining whether a reasonable person would have felt free to ignore police presence,

20   the Ninth Circuit considers five factors:  (1) the number of officers; (2) whether weapons were

21   displayed; (3) whether the encounter occurred in a public or nonpublic setting; (4) whether the

22   officer's officious or authoritative manner would imply that compliance would be compelled; and

23   (5) whether the officers advised the detainee of his right to terminate the encounter.  *United States*

24   *v. Washington*, 387 F.3d 1060, 1068 (9th Cir.2004) (citations omitted).  "[A] request for

25   identification by the police does not, by itself, constitute a Fourth Amendment seizure."  *INS v.*

26   *Delgado*, 466 U.S. 210, 216 (1984).  *See also Gilmore v. Gonzales*, 435 F.3d 1125, 1137–38 (9th

27   Cir.2006), *cert. denied,* 127 S. Ct. 929 (U.S. 2007).

28

                                        3

1    In *Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir.1993), the Ninth Circuit explained

2    that "stops" under the Fourth Amendment fall into three categories:

> First, police may stop a citizen for questioning at any time, so long as that citizen
> recognizes that he or she is free to leave.  Such brief, "consensual" exchanges need
> not be supported by any suspicion that the citizen is engaged in wrongdoing, and such
> stops are not considered seizures.  Second, the police may "seize" citizens for brief,
> investigatory stops.  This class of stops is not consensual, and such stops must be
> supported by "reasonable suspicion."  Finally, police stops may be full-scale arrests.
> These stops, of course, are seizures, and must be supported by probable cause.

7    *Morgan*, 997 F.2d 1244, 1252 (9th Cir.1993) (citations omitted).

8    If the court is able to determine as a matter of law that the plaintiff was seized, the

9    committee recommends the court instruct the jury accordingly and omit the portions of this

10   instruction that define a seizure.

11   Section 1983 "contains no independent state-of-mind requirement" apart from what is

12   necessary to state a violation of the underlying constitutional right.  *Daniels v. Williams*, 474 U.S.

13   327, 328 (1986).  It is well settled that "negligent acts do not incur constitutional liability."

14   *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir.2002).  Specific intent to violate a person's

15   rights "is not a prerequisite to liability under § 1983."  *Caballero v. City of Concord*, 956 F.2d

16   204, 206 (9th Cir.1992) (citations omitted).  Instead a plaintiff must prove the defendant acted

17   with the mental state necessary to show a violation of a particular right.  With respect to the

18   Fourth Amendment, the Supreme Court has defined a seizure of a person as "a governmental

19   termination of freedom of movement *through means intentionally applied*."  *Brower v. County of*

20   *Inyo*, 489 U.S. 593, 596–97 (1989) (emphasis in original).  Thus, this instruction includes an

21   optional definition of the term "intentionally" for use when it would be helpful to the jury.

22

23                                                           *Approved 10/2009*

24

25

26

27

28

4

1

2

### 9.19  PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE SEIZURE OF  PERSON—EXCEPTION TO WARRANT REQUIREMENT—*TERRY* STOP

3

4

In general, a seizure of a person for an investigatory stop is reasonable if, under all of the circumstances known to the officer at the time:

5

6

1.    the officer had a reasonable suspicion that the person seized was engaged in criminal activity such as driving under the influence or had committed a traffic infraction; and

7

8

2.    the length and scope of the seizure was reasonable.

9

10

In order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that the officer lacked reasonable suspicion to stop him or that the length and scope of the stop was excessive.

11

12

"Reasonable suspicion" is an objectively reasonable belief based on specific and articulable facts.

13

14

15

In determining whether the length and scope of the seizure was reasonable, consider how the officer restricted the plaintiff's liberty and the officer's reasons for using such methods and for the length of the stop.

16

17

18

Given as Submitted _____

19

Given as Modified_____

20

Declined_____

21

22

**Comment**

23

24

Use this instruction only in conjunction with the applicable elements instructions, Instruction 9.2–9.7, and in conjunction with Instruction 9.18 (Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Generally)**.**

25

26

A police officer may conduct a brief stop for investigatory purposes when the officer has only "reasonable suspicion" to believe the stopped individual is engaged in criminal activity.  *See*

27

28

5

1   *Terry v. Ohio*, 392 U.S. 1, 23-27 (1968).  *See also Allen v. City of Portland*, 73 F.3d 232, 235 (9th

2   Cir.1996).  Moreover, an investigatory stop of a vehicle is justified under the Fourth Amendment

3   if the officer reasonably suspects that only a traffic violation has occurred.  *United States v.*

4   *Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir.2006).

5          "Reasonable suspicion is formed by 'specific, articulable facts which, together with

6   objective and reasonable inferences, form the basis for suspecting that the particular person

7   detained is engaged in criminal activity.'"  *United States v. Dorais*, 241 F.3d 1124, 1130 (9th

8   Cir.2001) (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir.1996)).  It requires only

9   "a minimal level of objective justification."  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  An

10  investigatory stop is constitutionally justified if the officer suspects that a traffic violation has

11  occurred based on personal observation of the vehicle committing traffic violations.  *United*

12  *States v. Miranda-Guerena*, 445 F.3d 1233, 1237 (9th Cir. 2006).

13         A court must consider the totality of the circumstances when determining whether

14  reasonable suspicion existed.  *United States v. Osborn,* 203 F.3d 1176, 1181 (9th Cir.2000).

15         "There is no bright-line rule to determine when an investigatory stop becomes an arrest."

16  *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir.1996) (citing *United States v. Parr*, 843 F.2d

17  1228, 1231 (9th Cir.1988).  The analysis depends upon the "totality of the circumstances" and is

18  "fact-specific."  *Washington,* 98 F.3d at 1185.

19
            In looking at the totality of the circumstances, we consider both the intrusiveness of
20          the stop, *i.e.*, the aggressiveness of the police methods and how much the plaintiff's
            liberty was restricted, . . . and the justification for the use of such tactics, *i.e.*, whether
21          the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the
            action taken. . . . In short, we decide whether the police action constitutes a *Terry* stop
22          or an arrest by evaluating not only how intrusive the stop was, but also whether the
            methods used were reasonable given the specific circumstances.  . . .  As a result, we
23          have held that while certain police actions constitute an arrest in certain
            circumstances, *e.g.*, where the "suspects" are cooperative, those same actions may not
24          constitute an arrest where the suspect is uncooperative or the police have specific
            reasons to believe that a serious threat to the safety of the officers exists.  "The
25          relevant inquiry is always one of reasonableness under the circumstances.". . .

26
            *Id.* (citations omitted).
27

28

### 9.20  PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE SEIZURE OF PERSON—PROBABLE CAUSE ARREST

In general, a seizure of a person by arrest without a warrant is reasonable if the arresting officers had probable cause to believe the plaintiff has committed or was committing a crime.

In order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that he was arrested without probable cause.

"Probable cause" exists when, under all of the circumstances known to the officers at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

Under California law, it is a crime "for a person who is under the influence of any drug to drive a vehicle."  Under California law, it is also a crime if a person "willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment."

Given as Submitted _____

Given as Modified_____

Declined_____

**Comment**

Use this instruction only in conjunction with the applicable elements instructions, Instructions 9.2–9.7, and in conjunction with Instruction 9.18 (Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Generally)**.**

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964-65 (9th Cir.2001) (citing *Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir.1993)).

7

1    In *Devenpeck v. Alford*, the Supreme Court reiterated the Fourth Amendment standards

2    applicable in a § 1983 claim for false arrest:

3    > The Fourth Amendment protects "[t]he right of the people to be secure in their
     > persons, houses, papers, and effects, against unreasonable searches and seizures."  In

4    > conformity with the rule at common law, a warrantless arrest by a law officer is
     > reasonable under the Fourth Amendment where there is probable cause to believe that

5    > a criminal offense has been or is being committed. . . .  Whether probable cause
     > exists depends upon the reasonable conclusion to be drawn from the facts known to

6    > the arresting officer at the time of the arrest. . . .

7    > Our cases make clear that an arresting officer's state of mind (except for the facts that
     > he knows) is irrelevant to the existence of probable cause. . . .  That is to say, his

8    > subjective reason for making the arrest need not be the criminal offense as to which
     > the known facts provide probable cause.  As we have repeatedly explained, "the fact

9    > that the officer does not have the state of mind which is hypothecated by the reasons
     > which provide the legal justification for the officer's action does not invalidate the

10   > action taken as long as the circumstances, viewed objectively,  justify that action." . ..
     > "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to

11   > be taken in certain circumstances, *whatever* the subjective intent."

12   *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004) (citations omitted) (arresting officer's

13   subjective reason for making arrest need not be criminal offense for which known facts provide

14   probable cause); *see also Alford v. Haner*, 446 F.3d 935 (9th Cir.2006) (opinion on rehearing

15   after remand).

16   A police officer has probable cause to arrest a suspect without a warrant if the available

17   facts suggest a "fair probability" that the suspect has committed a crime.  *Tatum v. City and*

18   *County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir.2006) (citing *United States v. Valencia-*

19   *Amezcua*, 278 F.3d 901, 906 (9th Cir.2002).  *See also Hart v. Parks*, 450 F.3d 1059, 1066 (9th

20   Cir.2006).  "An officer who observes criminal conduct may arrest the offender without a warrant,

21   even if the pertinent offense carries only a minor penalty."  *Tatum,* 441 F.3d at 1094 (quoting

22   *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) to the effect that "[i]f an officer has

23   probable cause to believe that an individual has committed even a very minor criminal offense in

24   his presence, he may, without violating the Fourth Amendment, arrest the offender.").

25

26

27

28

8

1

2

**DEFENDANT'S SPECIAL INSTRUCTION 1:  DISSIPATION OF PROBABLE CAUSE.**

3          Once a police officer has a reasonable basis for believing there is probable cause, he is not

4 required to explore and eliminate every theoretically plausible claim of innocence before making

5 an arrest.  He is not required to give significant weight to a suspects' self-exonerating claims in

6 determining whether probable cause has dissipated.  However, if the arresting officer ascertains

7 beyond a reasonable doubt that the suspicion (probable cause) which forms the basis for the arrest

8 is unfounded, then probable cause has dissipated and no longer exists.

9

10

11          Given as Submitted _____

12          Given as Modified_____

13          Declined_____

14

15                              **Authority**

16          Police officers are not required to give significant weight to a suspects' self-exonerating

17 claims in determining whether probable cause has dissipated. *Thompson v. Olson*, 798 F.2d 552,

18 557 (1st Cir. 1986), cert. denied 480 U.S. 908, 94 L. Ed. 2d 524, 107 S. Ct. 1354 (1987); *Jackson*

19 *v. Inhabitants of Town of Sanford*, 1994 U.S. Dist. LEXIS 15367 (D. Me. 1994).  "Once a police

20 officer has a reasonable basis for believing there is probable cause, he is not required to explore

21 and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti*

22 *v. N.Y.C. Transit Auth.*, 124 F. 3d 123, 128 (2nd Cir. 1997); *see*, *e.g.*, *Fowler v. California*

23 *Highway Patrol*, 2014 U.S. Dist. LEXIS 58107, 31-32 (N.D. Cal. 2014) (holding that an innocent

24 explanation for conduct, that plaintiff had suffered a stroke, did not overcome the officer's

25 observation of the plaintiff's conduct nor "chip away at the fair probability" that she had violated

26 the law).  Once an officer determines that probable cause exists, he "should not be required to

27 reassess his probable cause conclusion at every turn, whether faced with the discovery of some

28 new evidence or a suspect's self-exonerating explanation from the back of the squad car."

1   *Thompson v. Olson*, 798 F.2d at 556.  Moreover, probable cause only dissipates "if the arresting

2   officer ascertains beyond a reasonable doubt that the suspicion (probable cause) which forms the

3   basis for the privilege to arrest is unfounded." *Id.* (Citing Restatement, Torts 2d, § 134, Comment

4   f).  See also *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995); *Duckett v. Cedar Park*, 950

5   F.2d 272, 278 (5th Cir. 1992); *Babers v. City of Tallassee*, 152 F. Supp. 2d 1298, 1309 (M.D.

6   Ala. 2001).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' PROPOSED JURY INSTRUCTIONS (2:14-cv-585-WBS-EFB)

1
2

### 9.22  PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE SEIZURE OF PERSON—EXCESSIVE (DEADLY AND NONDEADLY) FORCE

3   In general, a seizure of a person is unreasonable under the Fourth Amendment if a police

4   officer uses excessive force in making an arrest or in defending himself.  Thus, in order to prove

5   an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence

6   that the officers used excessive force when they punched Plaintiff and took him to the ground

7   while attempting to take him into custody.

8   Under the Fourth Amendment, a police officer may only use such force as is "objectively

9   reasonable" under all of the circumstances.  In other words, you must judge the reasonableness

10  of a particular use of force from the perspective of a reasonable officer on the scene and not with the

11  20/20 vision of hindsight.

12  In determining whether the officers used excessive force in this case, consider all of the

13  circumstances known to the officers on the scene, including:

14
15      1.    The severity of the crime or other circumstances to which the officers were responding;

16
17      2.    Whether the plaintiff posed an immediate threat to the safety of the officers or to others;

18      3.    Whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight;

19
20      4.    The amount of time and any changing circumstances during which the officer had to determine the type and amount of force that appeared to be necessary;

21      5.    The type and amount of force used;

22      6.    The availability of alternative methods to take the plaintiff into custody.

23
24

25  Given as Submitted _____

26  Given as Modified_____

27  Declined_____

28

11

**Comment**

Use this instruction only in conjunction with the applicable elements instructions, Instructions 9.2–9.7 and in conjunction with Instruction 9.18 (Particular Rights—Fourth Amendment —Unreasonable Seizure of Person—Generally)**.**

In general, all claims of excessive force, whether deadly or not, should be analyzed under the objective reasonableness standard of the Fourth Amendment as applied in *Graham v. Connor*, 490 U.S. 386, 397 (1989), *Tennessee v. Garner*, 471 U.S. 1 (1985)*,* and *Scott v. Harris*, 550 U.S. 372 (2007).  In *Acosta v. Hill*, 504 F.3d 1323 (9th Cir. 2007), the Ninth Circuit described the Supreme Court's holding *Scott v. Harris* as follows:  [T]here is no special Fourth Amendment standard for unconstitutional deadly force.  *See id.*  Instead, 'all that matters is whether [the police officer's] actions were *reasonable.'* (emphasis added)." (internal citations omitted).  Because the Ninth Circuit previously had held "[a]n excessive force instruction [under *Graham v. Connor*] is not a substitute for a [*Tennessee v.*] *Garner* deadly force instruction," and it would be error not to give a *Garner*-"probable cause" instruction in a deadly force case, *Monroe v. City of Phoenix, Ariz.*, 248 F.3d 851, 859 (9th Cir.2001), the Ninth Circuit in *Acosta* explicitly overruled *Monroe* as "irreconcilable" with the Supreme Court's decision in *Scott v. Harris*.  Accordingly, the committee has withdrawn its previous stand-alone "deadly force" instruction based on *Monroe* (former Instruction 9.23).

The factors identified in this instruction are based on pre-*Scott v. Harris* decisions of the Ninth Circuit applying the Fourth Amendment's general reasonableness standard in excessive force cases.  For example, in *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir.2005), the Ninth Circuit described the reasonableness standard under *Graham* as follows:

> "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396. . . . .  This balancing test entails consideration of the totality of the facts and circumstances in the particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id*.

12

1   *Blanford*, 406 F.3d at 1115.  Similarly, in *Jackson v. City of Bremerton*, 268 F.3d 646 (9th

2   Cir.2001), the court held that the "reasonableness" of a particular use of force must be judged

3   from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

4   hindsight.  268 F.3d at 651.  The court noted the "consideration of reasonableness must embody

5   allowance for the fact that police officers are often forced to make split-second judgments-in

6   circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is

7   necessary in a particular situation."  *Id.* (citations omitted).  "'Not every push or shove, even if it

8   may later seem unnecessary in the peace of a judge's chambers' [*sic*] violates the Fourth

9   Amendment."  *Id.* (quoting *Graham*, 490 U.S. at 396) (citations omitted).  "In evaluating the

10  nature and quality of the intrusion, [a court] must consider 'the type and amount of force

11  inflicted'" in making an arrest.  *Id*. at 651-52 (quoting *Chew v. Gates*, 27 F.3d 1432, 1440 (9th

12  Cir.1994)).

13      Moreover, as the Ninth Circuit has noted, the Supreme Court did not limit the

14  reasonableness inquiry to the factors set forth in *Graham*:

15      Because the test of reasonableness under the Fourth Amendment is not capable of
        precise definition or mechanical application," the reasonableness of a seizure must
16      instead be assessed by carefully considering the objective facts and circumstances
        that confronted the arresting officers.  In some cases, for example, the availability of
17      alternative methods of capturing or subduing a suspect may be a factor to consider.

18  *Smith v. City of Hemet*, 394 F.3d at 701 (citations omitted).

19      On the other hand, it is not error for a trial court to decline to instruct explicitly on the

20  availability of "alternative courses of action" when the instructions as a whole "fairly and

21  adequately cover[ed] the issues presented."  *Brewer v. City of Napa*, 210 F.3d 1093, 1096–97 (9th

22  Cir.2000).  If "it is or should be apparent to the officers that the individual involved is

23  emotionally disturbed, that is a factor that must be considered in determining, under *Graham*, the

24  reasonableness of the force employed."  *Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th

25  Cir.2003).

26      A police officer's "attempt to terminate a dangerous high-speed chase that threatens the

27  lives of innocent bystanders does not violate the Fourth Amendment, even when it places the

28  fleeing motorist at risk of serious injury of death."  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2021-22

13

1   (2014) ("if officers are justified in firing at a suspect in order to end a severe threat to public

2   safety, the officers need not stop shooting until the threat has ended") (citations omitted).

3

4                                                                 *Approved 6/2014*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' PROPOSED JURY INSTRUCTIONS (2:14-cv-585-WBS-EFB)

## DEFENDANT'S SPECIAL INSTRUCTION 2:  OFFICER'S RIGHT TO USE FORCE TO OVERCOME RESISTANCE.

Police officers are entitled by law to use some force to overcome resistance to being arrested.  A person does not have a right to offer resistance to arrest, including handcuffing, even if the officer has no probable cause for arrest him.  A person's limited right to offer reasonable resistance is only triggered by an officer's bad faith or provocative conduct.

Given as Submitted _____

Given as Modified_____

Declined_____

### **Authority**

The Fourth Amendment requires that an officer use only an amount of force that is objectively reasonable in light of the circumstances facing them while making an arrest. *Blankenhorm v. City of Orange,* 485 F.3d 463, 477 (9th Cir. 2007) (citing *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)).  The determination of whether the force used in arrest is reasonable is separate from the determination of whether there is probable cause for arrest.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921(9th Cir. 2001); *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004).  A determination that probable cause is absent does not establish an excessive force claim.  *Arpin,* at 921; *Beier,* at 1064.

An arrestee does not have a right to offer resistance to arrest, including handcuffing, even if probable cause for arrest is absent.  *Arpin, at* 921.  "**An individuals limited right to offer reasonable resistance is only triggered by an officers bad faith or provocative conduct."** *Id*. (emphasis added), see also .  The Fourth Amendment permits police officers to use some force to overcome resistance to being arrested - not every use of force constitutes excessive force, and "neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force."  *Blankenhorm v. City of Orange,*485 F.3d at 477 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

15

# CACI - 1305. BATTERY BY PEACE OFFICER

Plaintiff claims that Officer Brame and Officer Plumb harmed him by using unreasonable force to arrest him or overcome his resistance.  To establish this claim, Plaintiff must prove all of the following:

      1. That the defendant officer intentionally touched Plaintiff or caused Plaintiff to be touched;

      2. That the defendant officer used unreasonable force to arrest or overcome the resistance of Plaintiff;

      3. That Plaintiff did not consent to the use of that force;

      4. That Plaintiff was harmed; and

      5. That the defendant officer's use of unreasonable force was a substantial factor in causing Plaintiff's harm.

A California Highway Patrol Officer may use reasonable force to arrest or detain a person when he or she has reasonable cause to believe that that person has committed a crime. Even if the California Highway Patrol Officer is mistaken, a person being arrested or detained has a duty not to use force to resist the California Highway Patrol Officer unless the California Highway Patrol Officer is using unreasonable force.

In deciding whether Officer Brame and/or Officer Plumb used unreasonable force, you must determine the amount of force that would have appeared reasonable to a California Highway Patrol Officer in Officer Brame's and/or Officer Plumb's position under the same or similar circumstances. You should consider, among other factors, the following:

      (a) The seriousness of the crime at issue;

      (b) Whether Plaintiff reasonably appeared to pose an immediate threat to the safety of [name of defendant] or others; and

      (c) Whether Plaintiff was actively resisting arrest or attempting to evade arrest.

A  California Highway Patrol Officer who makes or attempts to make an arrest is not required to retreat or cease from his or her efforts because of the resistance or threatened resistance of the person being arrested.

16

*New September 2003; Revised December 2012*

Given as Submitted _____

Given as Modified_____

Declined_____

DIRECTIONS FOR USE

For additional authorities on excessive force, see the Sources and Authority for CACI No. 3001, Excessive Use of Force--Unreasonable Arrest or Other Seizure--Essential Factual Elements.

SOURCES AND AUTHORITY

> California Penal Code section 835a states: "Any peace officer, who has reasonable cause to believe that the person to be arrested has committed a public offense, may use reasonable force to effect the arrest, to prevent escape or to overcome resistance. A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance."

> California Penal Code section 834a states: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest."

> A plaintiff bringing a battery action against a police officer has the burden of proving unreasonable force as an element of the tort. (*Edson v. City of Anaheim* (1998) 63 Cal.App.4th 1269, 1272 [74 Cal.Rptr.2d 614].)

> " ' "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. ... [T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. ..." ' In calculating whether the amount of force was excessive, a trier of fact must recognize that peace

17

1  officers are often forced to make split-second judgments, in tense circumstances, concerning the

2  amount of force required." (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 527-528 [89

3  Cal.Rptr.3d 801], internal citations omitted.)

4       > "A police officer's use of deadly force is reasonable if ' " 'the officer has probable cause to

5  believe that the suspect poses a significant threat of death or serious physical injury to the officer

6  or others.' ..." ...' " (*Brown, supra,* 171 Cal.App.4th at p. 528.)

7       > "[T]here is no right to use force, reasonable or otherwise, to resist an unlawful detention

8  ...." (*Evans v. City of Bakersfield* (1994) 22 Cal.App.4th 321, 333 [27 Cal.Rptr.2d 406].)

9       > "[E]xecution of an unlawful arrest or detention does not give license to an individual to

10  strike or assault the officer unless excessive force is used or threatened; excessive force in that

11  event triggers the individual's right of self-defense." (*Evans, supra*, 22 Cal.App.4th at p. 331,

12  internal citation omitted.)

13                                Secondary Sources

14           5 Witkin, Summary of California Law (10th ed. 2005) Torts, § 424

15           3 Levy et al., California Torts, Ch. 41, Assault and Battery, § 41.24 (Matthew

16  Bender)

17           6 California Forms of Pleading and Practice, Ch. 58, Assault and Battery, §§ 58.22,

18  58.61, 58.92 (Matthew Bender)

19           2 California Points and Authorities, Ch. 21, Assault and Battery, § 21.20 et seq.

20  (Matthew Bender)

21           1 California Civil Practice: Torts (Thomson West) § 12:22

22

23                            WEST'S EDITORIAL REFERENCES

24       Direct References:

25       See BAJI 7.54

26       Related References:

27       BAJI 7.63, 7.66

28       Statutory References:

1    Pen. Code, §§ 834a, 835a

2    Library References:

3    Cal. Jur. 3d, Crimes Against Person § 369

4    Research References:

5    West's Key Number Digest, Assault and Battery k7, 10, 43(3)

6    C.J.S., Assault and Battery §§ 2, 4 to 7, 19, 26, 50

## CACI -3066. BANE ACT—ESSENTIAL FACTUAL ELEMENTS
### (CIV. CODE, § 52.1)

[Name of plaintiff] claims that [name of defendant] intentionally interfered with [or attempted to interfere with] [his/her] civil rights by threats, intimidation, or coercion. To establish this claim, [name of plaintiff] must prove all of the following:

      1.[That [name of defendant] made threats of violence against [name of plaintiff] causing [name of plaintiff] to reasonably believe that if [he/she] exercised [his/her] right [insert right, e.g., "to vote"], [name of defendant] would commit violence against [[him/her]/ [or] [his/her] property] and that [name of defendant] had the apparent ability to carry out the threats;]

      [or]

[That [name of defendant] acted violently against [[name of plaintiff]/ [and] [name of plaintiff]'s property] [to prevent [him/her] from exercising [his/her] right [insert right]/to retaliate against [name of plaintiff] for having exercised [his/her] right [insert right]];]

      2. That [name of plaintiff] was harmed; and

      3. That [name of defendant]'s conduct was a substantial factor in causing [name of plaintiff]'s harm.


Given as Submitted _____

Given as Modified_____

Declined_____

*New September 2003; Renumbered from CACI No. 3025 and Revised December 2012*

DIRECTIONS FOR USE

Select the first option for element 1 if the defendant's conduct involved threats of violence. (See Civ. Code, § 52.1(j).) Select the second option if the conduct involved actual violence.

The Bane Act provides that speech alone is not sufficient to constitute a violation unless it involves a credible threat of violence. (Civ. Code, § 52.1(j).) This limitation would appear to foreclose a claim based on threats, intimidation, or coercion involving a nonviolent consequence. (See *Cabesuela v. Browning-Ferris Industries* (1998) 68 Cal.App.4th 101, 111 [80 Cal.Rptr.2d 60] [to state a cause of action under Bane Act there must first be violence or intimidation by threat of violence].) For example, it would not be a violation to threaten to report someone to immigration if the person exercises a right granted under labor law. No case has been found, however, that applies the speech limitation to foreclose such a claim, and several courts have suggested that this point is not fully settled. (See *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959 [137 Cal.Rptr.3d 839] [we "need not decide that every plaintiff must allege violence or threats of violence in order to maintain an action under section 52.1"]; *City and County of San Francisco v. Ballard* (2006) 136 Cal.App.4th 381, 408 [39 Cal.Rptr.3d 1] [also noting issue but finding it unnecessary to address].) To assert such a claim, modify element 2 to allege coercion based on a nonviolent threat with severe consequences.

Civil Code section 52(a) provides for damages up to three times actual damages but a minimum of $4,000 for violations of Civil Code section 51 (Unruh Act), 51.5, and 51.6. Civil Code section 52(b) provides for punitive damages for violations of Civil Code sections 51.7 (Ralph Act) and 51.9. Neither subsection of Section 52 mentions the Bane Act or Civil Code section 52.1. Nevertheless, the reference to section 52 in subsection (b) of the Bane Act would seem to indicate that damages may be recovered under both subsections (a) and (b) of section 52.

Under the Unruh Act, if only the statutory minimum damages of $4,000 is sought, it is not necessary to prove harm and causation. (See *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 33 [219 Cal.Rptr. 133, 707 P.2d 195]. [Section 52 provides for minimum statutory damages for every violation of section 51, regardless of the plaintiff's actual damages]; see also Civ. Code, §

21

52(h) ["actual damages" means special and general damages].) Presumably, the same rule applies under the Bane Act as the statutory minimum of section 52(a) should be recoverable Therefore, omit elements 2 and 3 unless actual damages are sought. If actual damages are sought, combine CACI No. 3067, Unruh Civil Rights Act--Damages and CACI No. 3068, Ralph Act--Damages and Penalty, to recover damages under both subsections (a) and (b) of section 52.

<strong>Defendants' Authorities</strong>

Civil Code section 52.1 (the "Bane Act") provides that an individual may be liable if he or she, through the use of "threats, intimidation or coercion," interferes or attempts to interfere with a person's exercise or enjoyment of the rights provided by the Constitutions or laws of the United States or California. Cal. Civ. Code § 52.1.  The Bane Act is not intended to authorize a civil rights remedy as an alternative cause of action in virtually every tort action, as "its provisions are limited to threats, intimidation, or coercion." *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004).  The Bane Act is intended to address only the most egregious interferences with constitutional rights – the "act of interference with a constitutional right must itself be deliberate or spiteful." *Shoyoye v. County of Los Angeles*, , 203 Cal. App. 4th 947, 959 (2012).

Liability under the Bane Act requires coercion independent from that which is inherent in a wrongful arrest.  *Gant v. County of Los Angeles*, 772 F.3d 608, (9th Cir. 2014).  "[S]uch conduct must be 'intentionally coercive and wrongful, i.e., a knowing and blameworthy interference with the plaintiff's constitutional rights.'"  *Id.* (citing *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012)).  While there is a split in California authority, there is some authority that a successful claim of excessive force in violation of the Fourth Amendment also establishes a Bane Act claim.[1] *Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. Cal. 2014).  Accordingly, Plaintiff's Bane Act claim is, at best, dependent on a jury finding a use of excessive force in violation of the Fourth Amendment.

---

[1] Defendants do not concede this point, however.  See *Gant v. County of Los Angeles*, 765 F.Supp.2d 1238 (C.D.Cal. 2011); *Gant v. County of Los Angeles*, 772 F.3d 608, (9th Cir. 2014); and *Gant v. County of L.A.*, 2014 U.S. App. LEXIS 22192 (9th Cir. Cal. Nov. 24, 2014).

1       Pursuant to California's Penal Code, a person who is arrested may be subject to restraint for

2  arrest and detention, and a peace officer is entitled to use reasonable force to effect an arrest,

3  prevent escape or overcome resistance.  Cal. Penal Code. §§ 835, 835a.  The reasonableness of

4  the amount of force used is to be evaluated based on the totality of the circumstances.  *Hayes v.*

5  *County of San Diego, supra*, 57 Cal.4th at 632.

1
2

**DEFENDANTS' SPECIAL INSTRUCTION NO. D-3 INTRODUCTORY INSTRUCTION TO A.D.A/R.A (MODIFIED 12.1A)**

3   The plaintiff has brought a claim of discrimination against the State of California, acting by

4   and through the Department of California Highway Patrol (CHP) based on federal laws known as

5   the Americans with Disabilities Act, which will be referred to in these instructions as the ADA,

6   and the Rehabilitation Act, which will be referred to in these instructions as the RA.

7   Under the ADA and the RA, a public entity, acting through its employees, may not

8   deliberately discriminate against a person on the basis of a disability.  In order to prevail on his

9   ADA/RA claim against the defendant CHP , the plaintiff must prove each of the following

10   elements by a preponderance of the evidence:

11

12

13   Given as Submitted _____

14   Given as Modified_____

15   Declined_____

16

17   **Defendants' Comment**

18   This instruction is a modification of Ninth Circuit Model Instruction 12.1A, and is intended

19   to give an introduction to the ADA/RA instructions which follow.

20   Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act,

21   on which it was expressly modeled, both bar state and local governments from denying benefits

22   of services programs or activities or otherwise discriminating  against persons based on

23   disabilities.  42 U.S.C. § 1231(1)(B) and 29 U.S.C. § 794(B).   The basic elements of claims

24   under both acts do not substantially differ.  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135-1136

25   (9th Cir. 2001).

26   To prove that a public program or service violated Title II of the ADA, a plaintiff
must show: (1) he is a "qualified individual with a disability"; (2) he was either

27   excluded from participation in or denied the benefits of a public entity's services,
programs, or activities, or was otherwise discriminated against by the public entity;

28

24

1     and (3) such exclusion, denial of benefits, or discrimination was by reason of his
2     disability.

3     *Id.*

4     A plaintiff bringing suit under § 504 must show (1) he is an individual with a
      disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the
5     benefits of the program solely by reason of his disability; and (4) the program
      receives federal financial assistance.
6

7     *Id.*

8     Public entities can be vicariously liable under both acts for their employee's discriminatory

9     conduct. *Duvall,* 260 F.3d at 1141.  Liability, however, requires a plaintiff to prove that the

10    defendant deliberately discriminated against him. *Id.* at 1138.  **In order to do so, a plaintiff**

11    **must prove that the defendant was deliberately indifferent**. *Id.*

12    Deliberate indifference requires both knowledge that a harm to a federally protected
      right is substantially likely, and a failure to act upon that the likelihood. *City of*
13    *Canton v. Harris*, 489 U.S. 378, 389, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1988); see
      also *id.* at 395 (O'Connor , J., concurring) (deliberate indifference requires both"
14    some form of notice … and the opportunity to conform to statutory dictates").  In
      *Memmer*, we required the plaintiff to identify "specific reasonable" and "necessary"
15    accommodations that the defendant failed to provide. 169 F.3d at 633. When the
      plaintiff has alerted the public entity to his need for accommodation (or where the
16    need for accommodation is obvious, or required by statute or regulation), the public
      entity is on notice that an accommodation is required, and the plaintiff has satisfied
17    the first element of the deliberate indifference test.

18    *Id.* at 1139.

19    Because in some instances events may be attributable to bureaucratic slippage that
      constitutes negligence rather than deliberate action or inaction, **we have stated that**
20    **deliberate indifference does not occur where a duty to act may simply have been**
      **overlooked, or a complaint may reasonably have been deemed to result from**
21    **events taking their normal course. . . . Rather, in order to meet the second**
      **element of the deliberate indifference test, a failure to act must be a result of**
22    **conduct that is more than negligent, and involves an element of deliberateness**. . .
      . 156 F.3d at 331; *Matthews v. Jefferson*, 29 F. Supp. 2d 525, 535-536 (W.D. Ark.
23    1998) (notice combined with failure to provide appropriate facilities may violate Title
      II).
24
      *Id.* at 1140.
25
      The ADA defines "disability," in part, as follows:
26
      The term "disability" means, with respect to an individual--
27     (A) a physical or mental impairment that substantially limits one or more major life
      activities of such individual;
28     (B) a record of such an impairment; or

25

(C) being regarded as having such an impairment (as described in paragraph (3)).
  (2) Major life activities.
 (A) In general. For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

42 U.S.C. § 12102.

In the law enforcement context, there are two theories of recovery:  "(1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014).  As in Fourth Amendment cases, exigent circumstances of an enforcement action "inform the reasonableness analysis under the ADA."  *Id.*

26

**DEFENDANTS' SPECIAL INSTRUCTION NO. 4:  UNREASONABLY MISTAKEN ARREST:  RESPONDEAT SUPERIOR**

To establish whether Defendant Officers discriminated against Plaintiff based on a disability by wrongfully arresting him, the Plaintiff  must prove by a preponderance of the evidence, all of the following elements:

    1.       Plaintiff was disabled;

    2.       Plaintiff was engaging in lawful conduct caused by his disability;

    3.       Defendant Officers [and/or Defendant CHP] knew or had reason to know that Plaintiff had a disability [related to Plaintiff's conduct] [because either:

        a.       The disability was obvious[2]; or
        b.       Plaintiff told Defendant Officers or other CHP personnel that he had a disability];

    4.       Defendant Officers [and/or Defendant CHP] knew or had reason to know that Plaintiff's conduct was caused by his disability [because either:

        a.       The fact that the conduct was caused by the disability was obvious; or
        b.       Plaintiff told Defendant Officers or other CHP personnel that his conduct was caused by his disability;

    5.       Defendant Officers unreasonably believed that lawful conduct caused by Plaintiff's disability was [criminal behavior] a violation of Vehicle Code section 21352 (Driving under the influence of alcohol and/or drugs)          ;

    6.    Defendant officers arrested Plaintiff for legal conduct due to his disability.

Given as Submitted _____

Given as Modified_____

Declined_____

---

    [2] *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d at 1197. (see below—the "obvious" requirement is in reasonable accommodation cases, and it should be applied here for the same reasons.).

27

**Defendants' Comment**

This instruction follows the applicable law and assures a finding of deliberate indifference.

Under current Ninth Circuit law, police officers may be liable under the ADA/RA if, in arresting a suspect, they "<u>unreasonably</u> mistake an <u>innocent</u>, disability-related behavior for criminal conduct." *Roberts v. City of Omaha*, 723 F.3d 966, 973 (8th Cir. 2013). *See also Gohier v. Enright*, 186 F.3d 1216, 1220 & 1222 (10th Cir. 1999). As a preliminary matter, the plaintiff must show that the arresting officer either knew or should have known that the plaintiff was disabled. *Id.*; *Lewis v. Truitt*, 960 F.Supp. 175, 178 (S.D. Ind. 1997); *Mohoney v. Pennsylvania,* 809 F. Supp. 2d 384, 401 (W.D. Penn. 2011).

Plaintiff must also prove that the arresting officer was deliberately indifferent to plaintiff's rights under the ADA/RA given this knowledge. That requires that plaintiff prove that the arresting officer had both knowledge that a harm to a federally protected right under the ADA/RA was substantially likely if he arrested plaintiff, and that he failed to act upon that the likelihood. *Duvall v. County of Kitsap*, 260 F.3d at 1138. Moreover, "in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* at 1140.

Under the deliberate indifference standard, the wrongful arrest theory under ADA/RA is similar to a § 1983 wrongful arrest case with one very important difference: rather than employing the reasonableness analysis for probable cause, the ADA/RA analysis requires that plaintiff prove that the defendant officers' conduct was worse than unreasonable, it involved an element of deliberateness. In this case, neither Officer Brame nor Officer Plumb knew that Plaintiff was disabled nor that any of the totality of the circumstances for probable cause, including his dangerous driving, was due to a disability.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SPECIAL INSTRUCTION NO. D-5**

**ADA REASONABLE ACCOMMODATION (12.8 MODIFIED)**

To establish whether Defendant Officers discriminated against Plaintiff based on a disability during the course of [investigation or] arrest where the Defendant Officers properly investigated and arrested Plaintiff for a crime unrelated to his disability, the Plaintiff  must prove by a preponderance of the evidence, all of the following elements:

1.      At the time of Plaintiff's [investigation or] arrest, Defendant Officers [and/or Defendant CHP] knew or had reason to know that Plaintiff had a disability because either:

a.      The disability was obvious; or

b.      Plaintiff told Defendant Officers or other CHP personnel that he had a disability;

2.      At the time of the [investigation or] arrest, Defendant Officers or other CHP personnel knew or had reason to know that failure to accommodate that disability during the course of the arrest would result in Plaintiff suffering greater injury and/or indignity than a non disabled person during the [investigation or] arrest under the same or substantially similar circumstances because either:

a.      The need for accommodation was obvious; or

b.      Plaintiff told the Defendant Officers or other CHP personnel that he needed an accommodation due to the disability;

3.      Defendant Officers or other CHP personnel could have made a reasonable accommodation that would enable the Plaintiff to suffer no greater injury and/or indignity from the [investigation or] arrest than a non-disabled person under the same or substantially similar circumstances;

4.      Defendant officers or other CHP personnel failed to provide Plaintiff a reasonable accommodation;

29

5.    The failure to provide plaintiff a reasonable accommodation caused Plaintiff to suffer greater injury and/or indignity than a non-disabled person would have incurred during the arrest under the same or substantially similar circumstances.

It is for you to determine whether the accommodation[s] [that Plaintiff claims should have been provided] were reasonable [under the circumstances].

An accommodation is generally not reasonable when it would require Defendant CHP to fundamentally alter its law enforcement activities and/or if it would contravene[would be counter to]Defendant CHP's legitimate safety requirements and cause undue financial or administrative burden on its law enforcement activities.




Given as Submitted _____

Given as Modified_____

Declined_____


**Defendants' Comment**

Under current Ninth Circuit law, police officers may also be liable under the ADA/RA if they 1) properly investigate and arrest a person with a disability for a crime unrelated to that disability; and 2) they fail to reasonably accommodate the person's disability in the course of investigation or arrest; 3) causing the person to suffer greater injury or indignity in that process than other arrestees. *Sheehan*, 743 F.3d at 1232; *Gohier*, 186 F.3d at 1220-21; *Waller v. City of Danville*, 556 F.3d 171, 174 (4th Cir. 2009).  Plaintiff must prove that he was injured as a result of deliberate indifference to his rights under the ADA/RA.  *Duvall v. County of Kitsap*, 260 F.3d at 1138.

As with the wrongful arrest theory, the plaintiff must show that the arresting officer either knew or should have known that he was disabled.  *Gohier v. Enright*, 186 F.3d at 1220.  If a disability is not obvious, a plaintiff must tell the arresting officer or other defendant public entity employees of his disability before the public entity can be held liable under the ADA/RA because

30

1  the entity has no duty to accommodate a disability that it is unaware of. *Robertson v. Las Animas*

2  *County Sheriff's Dep't,* 500 F.3d 1185, 1196 (10th Cir. 2007).  For liability, the defendant public

3  entity must be on notice of the need to reasonably accommodate a plaintiff's disability, either

4  because it is obvious or because the plaintiff requests the accommodation. *Id.* at 1197-1198.

5         The public entity must be on notice of the need to accommodate a disability in order to

6  trigger its obligation to evaluate and potentially provide a reasonable accommodation. *Duvall v.*

7  *County of Kitsap,* 260 F.3d at 1139; *Paulone v. City of Frederick,* 718 F.Supp.2d 626, 635-636

8  (D. Md. 2010) (holding that the defendant was not obligated to provide an interpreter because an

9  interpreter was not requested).  The reasonableness of an accommodation is examined in the

10 totality of the circumstances, and is a fact-specific inquiry. *Waller v. Danville, VA,* 556 F.3d at

11 175; *Duvall v. County of Kitsap,* 260 F.3d at 1139.

12        Finally, a plaintiff must prove that, as a result of a failure to accommodate, he suffered an

13 injury or indignity greater than an able-bodied individual. *Rosen v. Montgomery County*

14 Maryland, 121 F.3d 154, 148 (4th Cir. 1997); *Gorman v. Bartch*, 152 F.3d 907, 909 (8th Cir.

15 1998).

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' SPECIAL INSTRUCTION NO. 6**

**ADA – PHYSICAL OR MENTAL IMPAIRMENT (12.2 MODIFIED)**

In order to recover damages under the ADA/RA, Plaintiff must prove that he has a recognized disability. A "disability" under the ADA is a physical or mental impairment that substantially limits one or more of the major life activities of such individual.

The phrase "physical or mental impairment" means:

(i) Any physiological disorder or condition affecting one or more of the following body systems, including: Neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular; or

(ii) Any mental or psychological disorder such as an intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

The phrase "physical or mental impairment" includes, but is not limited to, such contagious and noncontagious diseases and conditions as orthopedic, visual, speech and hearing impairments, intellectual disability, emotional illness.

Major life activities include, but are not limited to:

(i) Seeing, hearing, walking, standing, sitting, reaching, lifting, bending, speaking, thinking, communicating, and interacting with others.

(ii) The operation of a major bodily function, including the functions of special sense organs, neurological, brain, circulatory, cardiovascular, and musculoskeletal systems. The operation of a major bodily function includes the operation of an individual organ within a body system.

In determining other examples of major life activities, the term "major" shall not be interpreted strictly to create a demanding standard for disability. Whether an activity is a "major life activity" is not determined by reference to whether it is of "central importance to daily life."

"Substantially limits" is not meant to be a demanding standard. An impairment is a disability if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or

significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.

Given as Submitted _____

Given as Modified_____

Declined_____

**Defendants' Comment**

This instruction tracks the definition of disability in the applicable laws.  Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act, on which it was expressly modeled, both bar state and local governments from denying benefits of services programs or activities or otherwise discriminating against persons based on disabilities.  42 U.S.C. § 1231(1)(B) and 29 U.S.C. § 794(B).  The basic elements of claims under both acts do not substantially differ.  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135-1136 (9th Cir. 2001).

> To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Id.*

> A plaintiff bringing suit under § 504 must show (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.

*Id.*

The ADA defines "disability," in part, as follows:

> The term "disability" means, with respect to an individual--
> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment (as described in paragraph (3)).

33

        (2) Major life activities.
    (A) In general. For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

42 U.S.C. § 12102.

34

## CACI -3940 PUNITIVE DAMAGES—INDIVIDUAL DEFENDANT-TRIAL--NOT BIFURCATED

If you decide that [name of defendant]'s conduct caused [name of plaintiff] harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages only if [name of plaintiff] proves by clear and convincing evidence that [name of defendant] engaged in that conduct with malice, oppression, or fraud.

"Malice" means that [name of defendant] acted with intent to cause injury or that [name of defendant]'s conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that [name of defendant]'s conduct was despicable and subjected [name of plaintiff] to cruel and unjust hardship in knowing disregard of [his/her] rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that [name of defendant] intentionally misrepresented or concealed a material fact and did so intending to harm [name of plaintiff].

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was [name of defendant]'s conduct? In deciding how reprehensible [name of defendant]'s conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;

2. Whether [name of defendant] disregarded the health or safety of others;

3. Whether [name of plaintiff] was financially weak or vulnerable and [name of defendant] knew [name of plaintiff] was financially weak or vulnerable and took advantage of [him/her/it];

4. Whether [name of defendant]'s conduct involved a pattern or practice; and

5. Whether [name of defendant] acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and [name of plaintiff]'s harm [or between the amount of punitive damages and potential harm to [name of plaintiff] that [name of defendant] knew was likely to occur because of [his/her/its] conduct]?

(c) In view of [name of defendant]'s financial condition, what amount is necessary to punish [him/her/it] and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because [name of defendant] has substantial financial resources. [Any award you impose may not exceed [name of defendant]'s ability to pay.]

[Punitive damages may not be used to punish [name of defendant] for the impact of [his/her/its] alleged misconduct on persons other than [name of plaintiff].]

Given as Submitted _____

Given as Modified _____

Declined_____

**Defendants' Comment**

The proof requirements for punitive damages in claims under California law are different from those for claims under federal law. Mr. Orr is seeking punitive damages under both his federal and state law claims.  Because Mr. Orr is seeking punitive damages under both his federal and state law claims, the jury is to be instructed as to both standards.  *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1361 (9th Cir. 1985); *Mangold v. California Public Utilities Com'n*, 67 F.3d 1470, 1475 (9th Cir. 1995).  With regard to Mr. Orr's claims under 42 U.S.C. §

36

1983, the jury may award punitive damages against either or both of the officers if the jury

determines that the particular officer acted with malice, oppression, or in a reckless disregard to

Plaintiff's constitutional rights.  *Dang v. Cross*¸ 422 F.3d 800, 804-805, 807 (9th Cir. 2005).

Plaintiff must establish the right to punitive damages by a preponderance of the evidence.  *Id.*

Mr. Orr's right to punitive damages on his state law claims are governed by California law.

*In re First Alliance Mortg. Co.*, 471 F.3d 977, 998-999 (9th Cir. 2006).  With regard to some of

Mr. Orr's state law claims, the jury may award punitive damages against either or both of the

officers if they jury determines that the particular officer is guilty of (1) fraud, (2) oppression or

(3) malice.  Cal. Civ. Code § 3294(a).  California Civil Code section 3294 expressly defines what

each of these terms means.  *Id.*  Plaintiff is entitled to punitive damages under California law only

if he can establish that the officer is guilty of fraud, oppression or malice *by clear and convincing*

*evidence*.  *Id.*; *In re First Alliance Mortg. Co., supra*, 471 F.3d at 998-999.


Dated:  May 21, 2015                              Respectfully Submitted,

                                                  KAMALA D. HARRIS
                                                  Attorney General of California
                                                  PETER A. MESHOT
                                                  Supervising Deputy Attorney General

                                                  */s/ STEPHEN C. PASS*

                                                  STEPHEN C. PASS
                                                  Deputy Attorney General
                                                  *Attorneys for Defendants State of*
                                                  *California by and through California*
                                                  *Highway Patrol, CHP Officer Plumb and*
                                                  *CHP Officer Brame*

37

1

**CERTIFICATE OF SERVICE**

2

**Case Name:   Harrison Orr v. California Highway Patrol, Officers Brame, Plumb, et al.**

3

**Case No.:      2:14-cv-585-WBS-EFB**

4

I hereby certify that on May 21, 2015, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

5

DEFENDANTS' PROPOSED JURY INSTRUCTIONS

6

7

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

8

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 21, 2015, at Sacramento, California.

9

10

11

| Terry Lee Farster | */s/ Terry Lee Farster* |
|---|---|
| Declarant | Signature |

12

SA2014312527
DEFENDANTS' PROPOSED JURY INSTRUCTIONS-Authorities.doc

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' PROPOSED JURY INSTRUCTIONS (2:14-cv-585-WBS-EFB)