1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11                          ----oo0oo----

12  HARRISON ORR, individually,        CIV. NO. 2:14-585 WBS EFB

13              Plaintiff,             MEMORANDUM AND ORDER RE: RULE
                                       50(b) MOTION
14       v.

15  CALIFORNIA HIGHWAY PATROL, a
    public entity; STATE OF
16  CALIFORNIA, a public entity;
    CALIFORNIA HIGHWAY PATROL
17  OFFICERS BRAME, PLUMB, and
    DOES 1-10 individually,
18

19              Defendants.

20
                            ----oo0oo----
21

22          Plaintiff Harrison Orr brought this action against

23  defendants California Highway Patrol ("CHP"), Officer Jay Brame,

24  and Officer Terrence Plumb, arising out of plaintiff's arrest on

25  August 3, 2013.  Plaintiff alleged that the officers unlawfully

26  arrested him and used excessive force against him in violation of

27  state and federal law.  The case went to trial and on June 17,

28  2015, the jury returned a verdict in part for plaintiff on claims

                                   1

1   against Officer Plumb for $125,000.  Presently before the court

2   is Plumb's renewed motion for judgment as a matter of law

3   pursuant to Rule 50(b).

4           As shown by the evidence at trial, on the morning of

5   August 3, 2013, Officer Brame pulled plaintiff over because he

6   suspected him of driving under the influence of drugs or alcohol.

7   At the time, plaintiff was a 76-year-old man with slurred speech

8   and difficulties balancing, resulting from a brain stem stroke he

9   suffered in 2006.  Plaintiff's disabilities caused him to fail

10  several sobriety tests.  As a further measure, Officer Plumb

11  arrived at the scene with a breathalyzer testing device.

12  Plaintiff blew a 0.0, indicating he had not been drinking.

13  Plaintiff testified that he repeatedly told the officers he had

14  suffered from a stroke which affected his balance, while the

15  officers insisted at trial that plaintiff used the word

16  "neurological condition."  The officers nevertheless determined

17  that plaintiff must be under the influence of drugs and decided

18  to arrest him.

19          Although plaintiff was initially cooperative, he

20  refused to be handcuffed.  In an attempt to handcuff plaintiff,

21  the officers grabbed him from either side, Plumb punched

22  plaintiff in his stomach, and the officers took plaintiff to the

23  ground.

24          Officer Brame then took plaintiff to the CHP office for

25  further evaluation.  When it was determined he was not under the

26  influence of drugs, he was booked for resisting arrest in

27  violation of California Penal Code section 148.  Plaintiff

28  remained at the county jail until approximate 1:00 a.m.

1          The jury did not find Brame or the CHP liable on any of

2     plaintiff's claims.  It returned a verdict against Plumb on the

3     following claims: (1) unlawful arrest for the offense of

4     resisting arrest in violation of 42 U.S.C. § 1983 and California

5     state law; (2) the use of excessive force in violation of 42

6     U.S.C. § 1983 and California state law; and (3) interfering with

7     civil rights in violation of the Bane Act, Cal. Civ. Code § 52.1.

8     Plumb challenges the jury's verdict on the grounds of legal

9     insufficiency and also asserts that he is entitled to qualified

10    immunity on plaintiff's federal claims.

11    I.   Excessive Force

12         Although a claim of battery by a police officer under

13    California law does not require proof of the same elements as a

14    Fourth Amendment excessive force claim under 42 U.S.C. § 1983,

15    for purposes of simplification, the parties agreed the jury could

16    be instructed that if they found on plaintiff's § 1983 claim that

17    a defendant used excessive force on plaintiff, then plaintiff had

18    established his claim for battery by a peace officer against that

19    defendant under state law.  Accordingly, in considering the

20    pending motion under Rule 50(b), the court will analyze the

21    sufficiency of the evidence on both of those claims by the same

22    standards.

23         A.   Sufficiency of the Evidence

24         A motion for judgment as a matter of law on a claim may

25    be granted under Rule 50 only if there was no legally sufficient

26    basis for a reasonable jury to find for the plaintiff on that

27    claim.  Costa v. Desert Palace, Inc., 299 F.3d 838, 859 (9th Cir.

28    2002).  The court must generally draw all reasonable inferences

3

1   in favor of the plaintiff and may not make credibility

2   determinations or weigh the evidence.  Johnson v. Paradise Valley

3   Unified Sch. Dist._, 251 F.3d 1222, 1217 (9th Cir. 2001).

4         Under both § 1983 and California law, whether force was

5   unlawful turns on whether "the officers' actions are 'objectively

6   unreasonable' in light of the facts and circumstances confronting

7   them, without regard to their underlying intent or motivation."

8   Graham v. Conor, 490 U.S. 386, 397 (1989).  The reasonableness

9   analysis considers a variety of factors, including (1) the

10  severity of the crime at issue; (2) whether the suspect posed an

11  immediate threat to the safety of the officers or others; and (3)

12  whether he was actively resisting arrest or attempting to evade

13  arrest by flight.  Smith v. City of Hemet, 394 F.3d 689, 701 (9th

14  Cir. 2005) (citing Graham, 490 U.S. at 396).  These factors are

15  non-exhaustive.  The trier may also consider (4) the availability

16  of alternative methods of capturing or subduing a suspect, see

17  id.; and (5) whether a warning was given where the force could

18  have resulted in serious injury, if giving the warning was

19  feasible, see Deorle v. Rutherford, 272 F.3d 1272, 1284 (9th Cir.

20  2001).

21        The jury was properly instructed that it could consider

22  the foregoing factors in analyzing Plumb's use of force, and

23  competent counsel on both sides were given a full opportunity to

24  argue their respective positions on the question of whether the

25  amount of force used was reasonable under the circumstances.  In

26  making its determination, the jury not only had the benefit of

27  hearing the testimony of the witnesses but also to observe them

28  as they testified.  Beyond that, the plaintiff and each of the

1  defendants sat and moved about the courtroom in the presence of

2  the jurors throughout the nine-day trial.  The jury thus had the

3  unique ability to assess the relative prowess of plaintiff and

4  defendants far better than can be described verbally in terms of

5  pounds, inches, or years.

6       The evidence showed that plaintiff had agreed to submit

7  to arrest, but explained to the officers that he was afraid of

8  being handcuffed.  He folded his arms in front of him, tensed his

9  muscles and twisted his body to avoid being handcuffed.  The

10 officers flanked plaintiff and grabbed his arms.  Before

11 plaintiff was forcibly taken to the ground and handcuffed, Plumb

12 punched him in the stomach.  Plumb described this as a

13 "distraction blow" to divert plaintiff's attention away from what

14 he was doing. (Plumb Trial Tr. at 67:23-68:1, 82:25-83:2 (Docket

15 No. 152-2).)

16      After considering all the evidence, the court's

17 instructions, and the arguments of counsel, after two days of

18 deliberation, the jurors unanimously found that the amount of

19 force used by Officer Plumb was excessive.  There was ample

20 evidence to support the jury's verdict.  First, the "crimes" at

21 issue could hardly have been more minor.  Plaintiff's only crime

22 consisted of driving five miles per hour slower (sic) than the

23 recommended speed on a dangerous curve and making what Officer

24 Brame opined was an unsafe lane change.  Although the officers

25 also suspected plaintiff of being under the influence of some

26 unspecified drug, he was not.

27      Second, there was no evidence that plaintiff posed any

28 appreciable threat to the officers' safety.  Plaintiff was a 76-

1    year old disabled man confronted by two young officers.  He had

2    been a "model citizen" up to the point that he refused to be

3    handcuffed.  (Brame Trial Tr. at 127:5-11.)  He was well dressed

4    in what appeared to be golf clothes and demonstrated none of the

5    behavior of a dangerous criminal.

6           At one point before Plumb punched him, Plumb said

7    plaintiff raised his arms with his hands balled up in fists on

8    either side of his face, palms facing forward, and elbows bent at

9    an angle, as shown in the photo attached to this Order. (See

10   Plumb's Dep. Vol. II at 63:22-64:13.)  Brame testified that he

11   saw no such thing.  Assuming the jury accepted Plumb's testimony

12   on this point, which the court seriously doubts, it was for the

13   jury to decide whether that stance was aggressive, as Plumb

14   attempted to portray it, or defensive.  The jury was entitled to

15   find that--far from providing justification for the so-called

16   "distraction blow"--plaintiff's gesture was more reasonably

17   interpreted as one of submission, which would have made it easier

18   rather than harder to place the handcuffs on plaintiff without

19   punching him.

20          Further, after he was pulled to the side of the road,

21   plaintiff posed no conceivable danger to other persons either.

22   Because the stop took place on the side of the highway, no other

23   pedestrians were present.  Brame testified that the only thing he

24   considered an immediate threat to officer safety was that

25   plaintiff's behavior prolonged the stop on the side of the

26   highway, which is "not a safe location."  (Brane Trial Tr. at

27   135:1-21.)  However, it was Brame, not plaintiff, who chose the

28   side of the highway as the location for the stop, and could have

                                    6

1    moved the proceedings to another location if he had so chosen.

2    (Id. at 135: 22-136:7.)

3         Third, plaintiff was certainly not trying to avoid

4    arrest by flight.  Whether his resistance to being handcuffed

5    could be called active or passive is more a semantic question

6    than anything else.  Fourth, there was evidence from plaintiff's

7    expert witness of the availability of alternative methods of

8    taking plaintiff into custody.  And fifth, neither of the

9    officers warned plaintiff ahead of time that if he continued to

10   resist being handcuffed he would be punched, or thrown to the

11   ground, or that any other violent action would be taken against

12   him.

13        Thus, considering all of the Graham factors summarized

14   above, there was more than sufficient evidence presented at trial

15   permitting the jury to rationally conclude from all of the facts

16   and circumstances that Plumb's use of force was excessive in

17   violation of the Fourth Amendment and state law.

18        B. Qualified Immunity

19        The jury expressly found that Plumb violated

20   plaintiff's right under the Fourth Amendment to be free from the

21   use of excessive force in making an arrest.  The court finds no

22   reason to overturn that finding.  In the qualified immunity

23   analysis, the court must then address the questions of whether

24   that right was clearly established and whether a reasonable

25   officer would understand that his conduct violated that clearly

26   established law.  See  Torres v. City of Madera, 648 F.3d 1119,

27   1123 (9th Cir. 2011). Qualified immunity is only available on

28   plaintiff's federal claim under § 1983 and not on his state law

1  battery claim.

2       Whether the unlawfulness of certain conduct is clearly

3  established "depends largely 'upon the level of generality at

4  which the relevant legal rule is to be identified.'"  Wilson v.

5  Layne, 526 U.S. 603, 614 (1999) (quoting Anderson v. Creighton,

6  483 U.S. 635, 639 (1987)).  The right must be defined in a

7  "particularized, and hence more relevant, sense," requiring a

8  court to strike a balance between defining a right too generally

9  so that the definition necessarily leads to the conclusion that

10  the right is clearly established and defining the right too

11  narrowly so that prior precedent must mirror the facts of the

12  case in order to conclude that the right has been clearly

13  established.  Saucier v. Katz, 533 U.S. 194, 202-03 2001).

14       "The Supreme Court has made clear that 'officials can

15  still be on notice that their conduct violates established law

16  even in novel factual circumstances.'"  Mattos v. Agarano, 661

17  F.3d 433, 442 (9th Cir. 2011) (quoting Hope v. Pelzer, 536 U.S.

18  730, 741 (2002)).  The Ninth Circuit has noted the importance of

19  that principle "in the context of Fourth Amendment cases, where

20  the constitutional standard--reasonableness--is always a very

21  fact-specific inquiry."  Id.  This is especially so when the

22  inquiry involves the amount or degree of force used.

23       Plumb testified that according to his training an

24  officer may use a "distraction blow" to divert someone's

25  attention away from what they were doing to enable the officer to

26  pursue another avenue to get what he needs done.  The concept of

27  the so-called distraction blow has been discussed in a number of

28

cases.[1]  Simply labeling something a "distraction blow," however, does not necessarily make it lawful, and any reasonable police officer should know that.  The lawfulness of force in effecting an arrest always depends on the totality of the circumstances. It is not reasonable to punch a non-threatening disabled and defenseless senior citizen in the stomach just to get his attention, and any reasonable police officer should know that too.

A review of Ninth Circuit case law shows that, even when an arrestee refuses to comply with an officer's instructions, the use of a punch, or a "distraction blow," is

---

[1] See, e.g., Russell v. City and County of San Francisco, Civ. No. 3:12-00929 JCS, , 2013 WL 2447865 (N.D. Cal. June 5, 2012) (denying motion for summary judgment because factual issues remained as to whether officer's use of a "distraction blow" to plaintiff's face, from which plaintiff suffered a laceration and fractured neck, was reasonable under the circumstances);

Johnson v. Cortes, Civ. No. 3:09-039462011 SI, 2011 WL 445921 SI (N.D. Cal. Feb. 4, 2011) (holding there was no Fourth Amendment violation where officers used distraction blows after plaintiff attempted to assault police officer);

Barber v. Santa Maria Police Dept., Civ. No. 2:08-062732010 DMG MLG, 2010 WL 5559708 (C.D. Cal. Sept. 1, 2010) (holding that officers' use of three "distraction strikes" to plaintiff's face and neck were objectively reasonable given that plaintiff was refusing to comply with the officers' verbal commands, was attempting to destroy evidence, and was physically resisting attempts to handcuff him);

Vivero v. City of Merced Police Dept., Civ. No. 1:08-01751 LJO DLB, 2009 WL 3625385 (E.D. Cal. Oct. 29, 2009) (concluding the jury must sort through facts to determine whether officer's use of "distraction blows to the face" was reasonable under the circumstances);

Wisler v. City of Fresno, Civ. No. 1:06-1694 AWI SMS, 2008 WL 2625865 (E.D. Cal. June 26, 2008) (concluding whether officer's use of "distractions blows" was reasonable  hinged on whether arrestee grabbed officer's testicles before officer used "distraction blows," which was disputed);

Gonzales v. Novosel, Civ. No. 3:07-04720 CRB, 2008 WL 4614665 (N.D. Cal. Oct. 16, 2008) (granting summary judgment on plaintiff's excessive force claim because no reasonable juror could conclude the officers' use of force, including four to six closed-fisted "distraction blows," was unreasonable where it was in response to plaintiff's aggressive and continuous violent).

1  impermissible when the arrestee's conduct is non-threatening.

2         In a case with circumstances surprisingly similar to

3  the present one, the Ninth Circuit held that under the Graham

4  analysis, the use of force was objectively unreasonable.  In

5  Winterrowd v. Nelson, 480 F.3d 1181, 1182 (9th Cir. 2007), police

6  pulled over the plaintiff suspecting that his license plates were

7  invalid.  When plaintiff did not produce a valid registration,

8  police ordered him to get out of the car and put his hands behind

9  his back.  Id.  The plaintiff explained to the officers that he

10 could not put his hands behind his back because he had a shoulder

11 injury.  Id.  The officers responded by forcing plaintiff onto

12 the hood of the car, grabbing plaintiff's right arm, and forcing

13 it up, until the plaintiff screamed in pain.  Id.  The Ninth

14 Circuit concluded that because the officers did not reasonably

15 fear for their safety, the use of force was unreasonable.

16 Winterrowd therefore clearly established that, absent conduct

17 that is reasonably perceived as physical abuse or a threat to the

18 safety of the officers or third parties, a mere refusal to comply

19 with an officer's instruction does not justify the use of force.

20        In the present case, even assuming Plumb's version of

21 the facts, it was unreasonable for Plumb to fear for his and

22 Brame's safety.  Plaintiff's hands-up posture could not

23 reasonably have been interpreted by Plumb as "physical abuse" or

24 an immediate threat to officer safety.  Plaintiff "didn't take a

25 swing at the officers," nor did the officers suspect plaintiff

26 was carrying a weapon.  See Winterrowd, 480 F.3d at 1184.

27        Moreover, plaintiff was an elderly man who, up until

28 the point the officers insisted on handcuffing him, was

10

1  cooperative and agreed to the arrest.  Plumb admitted that when

2  approaching Brame and plaintiff, "I couldn't hear anything, but I

3  didn't see anything physical that would make me assume he was

4  being uncooperative".  Like Winterrowd, plaintiff was initially

5  pulled over for several traffic violations for which he could

6  have received  mere citations.  See Winterrowd, 480 F.3d at 1184.

7  While not a case on all fours, Winterrowd is amazingly similar to

8  the present case in material respects, and was sufficient to

9  place an officer like Plumb on notice that the kind of conduct he

10 exhibited here was unacceptable.  See Torres v. City of Madera,

11 648 F.3d 1119, 1128 (9th Cir. 2011) ("[W]e have never required a

12 prior case on all fours prohibiting that particular manifestation

13 of unconstitutional conduct to find a right clearly established."

14 (internal quotation marks and citation omitted)).

15      Meredith v. Erath, 342 F.3d 1057, 1061 (9th Cir. 2003),

16 decided by the Ninth Circuit a decade before plaintiff's arrest,

17 likewise clearly established the similar principle that

18 resistance to being handcuffed does not alone justify the use of

19 force.  In that case, police encountered plaintiff Bybee while

20 they were enforcing a warrant to search a building for signs of

21 tax evasion.  Id. at 1060.  Bybee objected to the search and

22 officers threw her to the ground and forcibly handcuffed her.

23 Id.  Although Bybee "objected vociferously to the search and she

24 'passively resisted' the handcuffing," the court found "the need

25 for force, if any, was minimal at best."  Id. at 1061.

26      As discussed above, whether a suspect's resistance is

27 labeled "passive" or "active" is a question of degree and depends

28 on the totality of the circumstances required under the Fourth

Amendment.  As the Ninth Circuit recently recognized,

> "Resistance" . . . should not be understood as a binary state, with resistance being either completely passive or active. Rather, it runs the gamut from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer. We must eschew ultimately unhelpful blanket labels and evaluate the nature of any resistance in light of the actual facts of the case.

Bryan v. MacPherson, 630 F.3d 805, 830 (9th Cir. 2010).

Harry Orr's objection to being handcuffed was expressed verbally and by folding his arms in front of him and moving side to side.  Whether his resistance to the handcuffing is labeled as "passive" or "active," like Bybee, plaintiff was agreeable to accompanying the officers to the CHP office, made no attempt to flee the scene, and did not pose a safety risk and made no attempt to flee the scene.  See Meredith, 342 F. 3d at 1061.

Together, both Meredith and Winterrowd clearly established that Plumb's use of a "distraction blow" to get plaintiff to comply with the handcuffing, absent any conduct that could reasonably be interpreted as a threat to officer safety, was an unreasonable use of force in violation of the Fourth Amendment.

Plumb cites several other cases which he argues clearly established that his use of force was reasonable.  In Tatum v. City and County of San Francisco, 441 F.3d 1090, 1092 (9th Cir. 2006), the court found an officer's use of a control hold reasonable, given the suspect's potentially violent behavior which posed a threat to himself, the police, and possibly

1    passersby.  Tatum does not stand for the proposition that the use

2    of a punch is reasonable under the circumstances of either that

3    case or the present case; to the contrary, the case suggests that

4    a use of a punch to control a suspect under similar circumstances

5    would be unreasonable, id. at 1097.

6           Plumb also cites Blankenhorn v. City of Orange, 485

7    F.3d 463 (9th Cir. 2007), arguing that it clearly established

8    that a single punch can be a reasonable use of force in response

9    to resistance.  There, the court held that clearly established

10   law put a reasonable officer on notice that "punching Blankenhorn

11   to free his arms when, in fact, he was not manipulating his arms

12   in an attempt to avoid being handcuffed was a Fourth Amendment

13   violation."  Id. at 481.  It does not follow from this holding

14   that a distraction blow may be used any time an arrestee resists

15   being handcuffed.  Both Meredith and Winterrowd stand for the

16   opposite principle.  In fact, the Blankenhorn court itself in its

17   qualified immunity analysis found it was clearly established that

18   an officer must, before gang-tackling a subject, "first attempt[]

19   a less violent means of arresting a relatively calm trespass

20   suspect--especially one who had been cooperative in the past and

21   was at the moment not actively resisting arrest."  Id. at 481.

22          From all of these cases, it is clear that merely

23   calling a punch a "distraction blow," in department policy or on

24   the witness stand, does not immunize an objectively unreasonable

25   use of force from constitutional scrutiny.  Neither does labeling

26   a suspect's resistance as "active."  Even viewing the facts in

27   the light most favorable to Plumb--that is, accepting the story

28   Plumb told on the stand which contravened all others--Plumb is

                                    13

1  not entitled to qualified immunity on plaintiff's excessive force

2  claim.   The court must conclude that any reasonable officer in

3  Plumb's position would have known that his conduct violated

4  clearly established law.

5          There was no legitimate explanation for why the

6  distraction blow was necessary at all, other than possibly to

7  retaliate against plaintiff for not following orders or for

8  poking his finger at Plumb's face while speaking with him.   As

9  long as the officers were going to take plaintiff to the ground

10  anyway, Plumb could have bypassed the punch altogether and, with

11  the assistance of Brame, immediately taken plaintiff to the

12  ground to handcuff him as they did.   Although the Attorney

13  General persists in attempting to defend it, neither the jury nor

14  the court can find any justification for that blow.

15         As the Supreme Court has instructed, the qualified

16  immunity defense protects "all but the plainly incompetent or

17  those who knowingly violate the law."   <u>Malley v. Briggs</u>, 475 U.S.

18  335, 341 (1986).   The court expresses no opinion as to Officer

19  Plumb's competency.   However, the court has no problem in

20  concluding that Officer Plumb knowingly violated the law.

21  Officer Brame testified unequivocally that the CHP required all

22  of its officers to make a written report of any use of force.

23  Although he admitted that he was fully aware of this rule, Plumb

24  failed to ever make any written report of his striking of

25  plaintiff.   If he had truly believed he had done nothing wrong,

26  it is difficult to understand why he did not properly report it.

27  II. <u>Unlawful Arrest for the Crime of Resisting Arrest</u>

28         Again, while the elements of a § 1938 claim for

1   unlawful arrest are not the same as the elements of a false

2   arrest claim under California law, for purposes of

3   simplification, the parties agreed the jury could be instructed

4   that if it found on plaintiff's § 1983 claim for unlawful arrest

5   that Officer Brame and/or Officer Plumb unreasonably seized

6   plaintiff by arresting him without probable cause, then plaintiff

7   had established a claim for false arrest against that defendant

8   under state law.  For the same reasons, in considering the

9   pending motion under Rule 50(b), the court will analyze the

10  sufficiency of the evidence on both of those claims by the same

11  standards.

12      A. Sufficiency of the Evidence

13          Under both § 1983 and California state law, an arrest

14  is unlawful if it was made without probable cause.  "Probable

15  cause exists when, under the totality of the circumstances known

16  to the arresting officers, a prudent person would have concluded

17  that there was a fair probability that [the suspect] had

18  committed a crime."  United States v. Ortiz, 427 F.3d 567, 573

19  (9th Cir. 2004).  "While conclusive evidence of guilt is of

20  course not necessary under this standard to establish probable

21  cause, '[m]ere suspicion, common rumor, or even strong reason to

22  suspect are not enough.'"  United States v. Lopez, 482 F.3d 1067,

23  1072 (9th Cir. 2007) (quoting McKenzie v. Lamb, 738 F.2d 1005,

24  1008 (9th Cir. 1984)).  "The probable cause inquiry is an

25  objective one, focusing on the facts known to the officer at the

26  scene."  Fowler v. Cal. Highway Patrol, Civ. No. 3:13-1026, 2014

27  WL 1665046, at *6 (N.D. Cal. Apr. 25, 2014) (citing Devenpeck v.

28  Alford, 543 U.S. 146, 153 (2004)).  "The arresting officers'

1    subjective intention . . . is immaterial in judging whether their

2    actions were reasonable for Fourth Amendment purposes."   Lopez,

3    482 F.3d at 1072.

4           The jury found that Plumb did not have probable cause

5    to arrest plaintiff for the crime of resisting arrest in

6    violation of California Penal Code section 148.   The court

7    instructed the jury that section 148 makes it a crime to

8    willfully resist, delay, or obstruct a police officer in the

9    lawful performance or attempted lawful performance of his duties.

10   (Jury Instruction No. 11); see Cal Pen. Code § 148.   The court

11   further instructed that "[a] police officer is not lawfully

12   performing his or her duties within the meaning of the statute if

13   he is unlawfully arresting someone or using unreasonable or

14   excessive force when making or attempting to make an otherwise

15   lawful arrest or detention."   (Jury Instruction No. 11); see

16   People v. White, 101 Cal. App. 3d 161, 166 (4th Dist. 1980)

17   (holding a person cannot be convicted of violating section 148

18   when the arrest was unlawful); id. at 167 (holding an arrest is

19   unlawful if the officers lacked probable cause or used excessive

20   force).

21          Neither side objected to this instruction, nor do they

22   now disagree with the proposition of law it embodies.   Under this

23   instruction, because the jury found that Plumb used excessive

24   force in making the arrest, they had no choice but to conclude

25   that the arrest was unlawful.   Since Plumb knew of his use of

26   excessive force, it had to follow that he did not have probable

27   cause to arrest plaintiff for violating § 148.   The evidence was

28   sufficient to support the verdict.

1          Defendant confounds the issue by arguing that it was

2    Brame, and not Plumb, who made the arrest for the crime of

3    resisting arrest.  That argument might carry some weight if the

4    arrest for the crime of resisting arrest took place away from the

5    scene after plaintiff was cleared of driving under the influence.

6    However, that was not defendants' theory at trial nor was it

7    supported by the evidence.  First, it was not defendants' theory

8    at trial because in settling instructions, the court proposed

9    that the following question be included in the verdict form:

10   "After it was determined at the CHP office that plaintiff was not

11   under the influence of drugs, did the officer(s) unlawfully

12   arrest plaintiff for resisting arrest in violation of California

13   Penal Code Section 148?"  Counsel for defendants opposed this

14   question, insisting the jury be left to decide when the arrest

15   for resisting arrest occurred.  Counsel represented that

16   defendants wanted the jury to be able to conclude for themselves

17   whether the arrest took place at the office or previously at the

18   scene on the highway.  The court accommodated defendant's request

19   and struck the phrase "after it was determined at the CHP office

20   that plaintiff was not under the influence of drugs."

21          Second, all the evidence at trial supported a finding

22   that plaintiff was arrested for the crime of resisting arrest at

23   the scene on the side of the highway, while Plumb was present.

24   Plumb testified that he warned plaintiff at the scene that if he

25   did not agree to be handcuffed, he would arrest him for

26   resisting. (Plumb Trial Tr. at 76.)  Brame's conduct also

27   suggested he was taking plaintiff into custody for resisting

28   arrest.  Prior to the struggle with the two officers over the

1   handcuffing, Brame had told plaintiff that if he tested negative

2   for drugs at the CHP office, then Brame would personally bring

3   plaintiff back to his car, give him his keys, and send him on his

4   way. (Brame Trial Tr. at 125:1-5.) Nevertheless, after the

5   handcuffing incident, Brame inventoried plaintiff's car to check

6   for valuables before it could be taken into custody. (Id. at

7   120:6-21.)

8         Both Plumb and Brame's conduct is consistent with the

9   view that the purpose of the arrest had shifted from arrest for

10   DUI to arrest for violation section 148, and that the arrest for

11   the section 148 violation took place at the scene.   It was

12   reasonable for the jury to conclude from the evidence that

13   plaintiff, as well as his car, were taken into custody because

14   there was no longer any thought of taking plaintiff back to his

15   car if he tested negative for drugs but that instead plaintiff

16   was going to be taken to the jail and booked for resisting

17   arrest.

18         Assuming it found the arrest for resisting arrest took

19   place at the scene, the jury could also have reasonably concluded

20   that Plumb, who was present at the scene, was a substantial

21   factor in causing plaintiff's arrest. (See Jury Instruction No.

22   15 (defining substantial factor for the purposes of causation).)

23   Moreover, the jury was instructed that

24

25         [a] police officer has a duty to intercede when their
           fellow officers violate the constitutional rights of a

26         suspect or other citizen.   If the defendant officer
           had a realistic opportunity to intercede in the other

27         officer's unlawful arrest of plaintiff, but failed to
           do so, the defendant can also be held liable for the

28         unlawful arrest.

18

1  (Jury Instruction No. 12); see Cunningham v. Gates, 229 F. 3d

2  1271, 1289-90 (9th Cir. 2000).  Consistent with this instruction,

3  the jury could have found that Plumb, who was present at the

4  scene when plaintiff was arrested for resisting arrest, had a

5  reasonable opportunity to intercede in an arrest he knew was

6  unlawful.

7       Perhaps defendant's best argument is one that he hardly

8  touches upon.  Why?  Most probably because it puts the Attorney

9  General in a conflict of interests.  It can be argued that the

10  verdicts with respect to Plumb and Brame were inconsistent

11  because the jury could not have reasonably found that Brame had

12  probable cause to arrest plaintiff for resisting arrest, whereas

13  Plumb did not.

14       This argument, however, if successful, would place the

15  Attorney General in a dilemma if she is to effectively represent

16  both officers, because the remedy for truly inconsistent verdicts

17  generally is not to accept one verdict over the other but to

18  order an entirely new trial.  City of Los Angeles v. Heller, 475

19  U.S. 796, 806) (Stevens, J., dissenting) (citing Malley-Duff &

20  Associates v. Crown Life Ins. Co., 734 F.2d 133, 145 (3d Cir.

21  1984); Global Van Lines, Inc. v. Nebeker, 541 F.2d 865 (10th Cir.

22  1976); Fed. R. Civ. P. 49(b)(4) (providing that where the jury's

23  answers to written questions are inconsistent with each other and

24  the verdict, the remedy is to order a new trial)).  Ordering a

25  new trial would be detrimental to the interests of Brame, whom

26  the jury exonerated of all liability.  The court cannot see how

27  the Attorney General can persist in this argument on behalf of

28  Plumb given its potential adverse effect on the other client to

19

1  whom she still owes the same duty of representation in this case

2          Nevertheless, to the extent the argument is made in

3  Plumb's brief, the court rejects it.  Not only would a new trial

4  be detrimental to Brame, it would be unfair to the plaintiff,

5  whom the jury deemed entitled to compensation for his injuries,

6  and unfair to the jurors who took time from their jobs and

7  families to decide this case.  A judge nevertheless retains

8  authority to let an inconsistent verdict stand.  Zhang v. Am. Gem

9  Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003) (citing

10  cases).

11          "[W]hen faced with an apparently inconsistent verdict,

12  a court has a duty to attempt to read the verdict in a manner

13  that will resolve inconsistencies." Heller, 475 U.S. at 806

14  (Stevens, J., dissenting) (citing Gallick v. Baltimore & Ohio R.

15  Co., 372 U.S. 108, 119 (1963)).  The law recognizes "the jury's

16  right to an idiosyncratic position, provided the challenged

17  verdict is based upon the evidence and the law." Malm v. U.S.

18  Lines Co., 269 F. Supp. 731, 731-32 (S.D.N.Y. 1967).

19          The jury's verdicts for Brame and against Plumb were

20  perhaps idiosyncratic, but they can nevertheless supported by the

21  evidence presented at trial.  The jury, having found that Plumb

22  used excessive force, could have reasonably concluded that Plumb

23  was not "lawfully performing his duties" under Cal Pen. Code

24  section 148.  It was undisputed at trial that Brame did not see

25  the punch occur, nor did Brame discover that Plumb had punched

26  plaintiff until the time of the deposition.  Brame was thus

27  unaware of any facts suggesting plaintiff could not be resisting

28  arrest because Plumb had used excessive force.  Plumb, on the

1  other hand, had knowledge of his own unreasonable conduct, and

2  could not have had probable cause to arrest plaintiff for

3  resisting arrest because an element of that crime could not be

4  met.  See White, 101 Cal. App. 3d at 166 (holding a section 148

5  violation only occurs when an officer was in the lawful

6  performance of his duties).

7       Defendant argues that even if Plumb had knowledge that

8  he had used excessive force, there was probable cause to arrest

9  plaintiff for a section 148 violation because plaintiff resisted

10  arrest before Brame punched him.  (Def.'s Mem. at 17.)  There was

11  no clear-cut narrative that emerged from the testimony of the two

12  officers.  The jury could have found that Brame and Plumb each

13  observed or were aware of a different set of facts, calling for

14  two separate probable cause analyses under the Fourth Amendment.

15       The two verdicts can thus be read harmoniously, and the

16  court will not disturb the jury's verdict against Plumb on this

17  claim on the basis that it was unlikely given its verdict for

18  Brame.  Even if such a reading of the verdicts is inelegant, the

19  court sees no reason to keep one and dispose of the other or to

20  order a new trial.[2]

21       B.  Qualified Immunity

22       Again, qualified immunity is available only on

23  plaintiff's § 1983 claim and not on his state law claim for false

24  arrest.  On this claim, the court finds that defendant's

25  qualified immunity argument has no traction.  The jury returned a

26

27  [2] Defendant does not attack the verdict against Plumb on the unlawful arrest
    claim upon the ground that it is inconsistent with the verdict in his favor on
    the claim of unlawful arrest for driving under the influence.  The court
28  therefore does not address that potential argument.

1   verdict that Plumb used excessive force.  As discussed above,

2   that verdict was supported by the evidence.  It is clearly

3   established that an officer lacks probable cause to arrest a

4   suspect for resisting arrest under California law where the

5   officer knew or should have known that at the time he was not in

6   the lawful performance or attempted lawful performance of his

7   duties.  See Ortiz, 427 F.3d at 573; White, 101 Cal. App. 3d at

8   166 (holding a section 148 violation only occurs when an officer

9   was in the lawful performance of his duties).

10        Because Plumb used excessive force, he was not lawfully

11  performing his duties when he punched plaintiff.  As discussed,

12  under clearly established law, Plumb was on notice that his use

13  of force was excessive, and thus it would have been unreasonable

14  for him to conclude otherwise.  Plumb therefore either knew or

15  should have known that an element of a section 148 violation was

16  missing when Plumb arrested plaintiff, and he is not entitled to

17  qualified immunity on the federal claim for unlawful arrest.

18  III. Bane Act Claim

19        Qualified immunity does not apply to plaintiff's Bane

20  Act claims, so Plumb only challenges this claim based on the

21  sufficiency of the evidence.  The Bane Act, Cal. Civ. Code §

22  52.1, creates an individual cause of action where "a person . . .

23  whether or not acting under the color of law, interferes by

24  threat, intimidation, or coercion, or attempts to interfere by

25  threat, intimidation, or coercion" with a right secured by

26  federal or state law.  Id. § 52.1(a).  Section 52.1 was

27  originally adopted in response to a rise in hate crimes, but it

28  is not limited to such crimes, nor does it require plaintiffs to

1   demonstrate discriminatory intent.  Venegas v. County of Los

2   Angeles, 32 Cal. 4th 820, 843 (2004) (holding that "plaintiffs

3   need not allege that defendants acted with discriminatory animus

4   or intent, so long as those acts were accompanied by the

5   requisite threats, intimidation, or coercion").  The court's

6   instruction to the jury closely tracked the statute.  (See Jury

7   Instruction No. 20.)

8        Plumb argues that claims of Fourth Amendment violations

9   of wrongful arrest and excessive force are insufficient alone to

10  raise a Bane Act claim; there must be some additional element of

11  blameworthy interference.  (Def.'s Mem. at 15.)  "[Plaintiff] has

12  based his claim on the inherent coercive, threatening or violent

13  nature of the punch as a constitutional violation in itself."

14  (Id.)

15       The Ninth Circuit has recently held that a wrongful

16  arrest claim will not necessarily on its own establish a claim

17  under section 52.1.  See Gant v. County of Los Angeles, 772 F.3d

18  608, 623-24 (9th Cir. 2014) ("There is little Bane Act precedent

19  defining what constitutes 'coercion' independent from that which

20  is inherent in a wrongful arrest, but . . . such conduct must be

21  "intentionally coercive and wrongful, i.e., a knowing and

22  blameworthy interference with the plaintiffs' constitutional

23  rights." (citing Shoyoye v. County of Los Angeles, 203 Cal. App.

24  4th 947, 961 (2d Dist. 2012)).

25       Courts have recognized, however, that establishing an

26  excessive force claim under the Fourth Amendment can also satisfy

27  the elements of section 52.1.  See Chaudhry v. City of Los

28  Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014); Cameron v. Craig,

                                    23

1  713 F.3d 1012, 1022 (9th Cir. 2013); <u>Bender v. County of Los</u>

2  <u>Angeles</u>, 217 Cal. App. 4th 968, 978 (2d Dist. 2013) (holding that

3  where an arrest is unlawful and excessive force is applied in

4  making the arrest, there has been coercion in violation of the

5  Bane Act); <u>Venegas</u>, 32 Cal. 4th at 843.

6      Even if a Bane Act claim requires conduct in excess of

7  the minimum required for showing an excessive force claim, there

8  was sufficient evidence from which the jury could have reasonably

9  concluded Plumb's behavior was threatening, intimidating, or

10 coercive.  According to plaintiff, Plumb informed him he was

11 going to be handcuffed without heeding plaintiff's concerns about

12 being able to balance.  The jury could also have interpreted

13 Plumb's failure to inform Brame or provide a written report about

14 the punch as an attempt to hide behavior he felt was blameworthy.

15 Lastly, the jury could conclude that the punch constituted an

16 interference with a civil right in excess of what is minimally

17 required for a constitutional violation.  There is thus a legally

18 sufficient basis to support the jury's verdict against Plumb on

19 plaintiff's Bane Act claim.

20      IT IS THEREFORE ORDERED that defendant's motion

21 pursuant to Federal Rule of Civil Procedure 50(b) for judgment as

22 a matter of law be, and the same hereby is, DENIED.

23 Dated:  July 8, 2015

24 _____

25 WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

26

27

28

# EXHIBIT G

DEC-11-14 12:05:15 P