UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| HARRISON ORR, individually,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA HIGHWAY PATROL, a public entity; STATE OF CALIFORNIA, a public entity; CALIFORNIA HIGHWAY PATROL OFFICERS BRAME, PLUMB, and DOES 1-10 individually,<br><br>Defendants. | CIV. NO. 2:14-585 WBS EFB<br><br>ORDER RE: ATTORNEY'S FEES AND EXPENSES |

----oo0oo----

This excessive force case is on remand from the Ninth Circuit for recalculation of attorney's fees. After a 10-day trial, a jury found for plaintiff only on certain claims against defendant Plumb and awarded plaintiff $125,000. The court then awarded plaintiff $292,002.87 in attorney's fees and expenses. (Docket No. 203.) On appeal, plaintiff challenged certain rulings of this court, including various aspects of the court's

award of attorney's fees.[1]

The Ninth Circuit largely affirmed the court's rulings. (Docket Nos. 220, 221.) However, the Ninth Circuit held that this court erred by reducing the attorney's fee award based in part on its determination that the verdict would not meaningfully deter future violations by other officers. The Ninth Circuit explained that such finding was contrary to cases finding that fee awards would in fact have a deterrent effect, and that this court erred in relying on a law review article discussing empirical evidence finding there was little deterrent effect. The Ninth Circuit's memorandum disposition concluded as follows: "We therefore vacate the award and remand for recalculation of fees. On remand, the district court should reconsider or otherwise justify its lodestar reduction in light of this memorandum disposition."

On remand, plaintiff essentially argues that the court should reconsider its fee award in its entirety. However, such argument ignores the fact that the Ninth Circuit remanded for the limited purpose of reconsidering or justifying this court's lodestar reduction. The Ninth Circuit found no fault with the majority of this court's attorney's fee award, including its initial lodestar calculation, which resulted in a lodestar amount of $423,575. Nor does this court, on remand, find any fault with its prior lodestar calculation, notwithstanding plaintiff's voluminous briefing before and after the appeal suggesting that a

---

[1] Defendants also appealed certain of the court's rulings, which were affirmed by the Ninth Circuit.

different lodestar amount is appropriate.[2]

Pursuant to the Court of Appeals' mandate, however, the court will revisit its decision to reduce the lodestar amount by 45%. (See Docket No. 203 at 17-29.) The court now clarifies that the overwhelming majority of this reduction was based on plaintiff's limited success and not upon the court's finding that there was no meaningful deterrent effect to a fee award.

The court will not repeat its prior analysis regarding plaintiff's limited success and incorporates its discussion from its December 22, 2015 order.[3] (See Docket No. 203 at 17-23.) As the court has observed, counsel plaintiff asked the jury to award a total of $1.75 million against three defendants but the jury awarded only $125,000 in compensatory damages against one defendant on certain claims, which is only slightly more than 7%

---

[2] Notably, plaintiff raised many of the same arguments on appeal that he does now. Plaintiff spent several pages of his briefs on appeal arguing, for example, that the hourly rates allowed by this court were too low, though the Ninth Circuit saw no need to address this issue.
Because the Ninth Circuit remanded for the limited purpose of reconsidering or justifying the lodestar reduction, the court declines to recalculate the lodestar amount, or the amount of fees for plaintiff's fee application, to take in account any delay in payment. See Missouri v. Jenkins, 491 U.S. 274, 284 (1989) ("An adjustment for delay in payment is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee under [42 U.S.C.] § 1988."). Even assuming the remand envisioned a full reconsideration of the attorney's fees award, however, the court finds that there are no "extraordinary circumstances" in this case that would merit a fee enhancement for delay. See Perdue v. Kenny A., 559 U.S. 542, 556 (2010).

[3] The court also incorporates by reference its prior discussion regarding an enhancement to the lodestar due to the contingent nature of this case. (See Docket No. 203 at 27-29.)

3

of the damages sought by plaintiff.  That said, it is not so much
the disparity between what counsel asked the jury to award and
what the jury actually awarded that accounted for counsel's
limited success.  Rather, it is the fact that counsel was
unsuccessful in recovering damages for plaintiff on his most
important claims.

Plaintiff prevailed only on his claims against Officer
Plumb.  It was obvious from the verdict that the finding of
liability against Plumb was based on his punching plaintiff in
the stomach.  As should be clear from the Ninth Circuit's
description of the incident in its Memorandum Disposition, it
took little skill or effort to persuade a jury to find against
Plumb on that claim.[4]  His punching a 76-year-old disabled man
who could barely stand without a cane, who posed no immediate
threat, and who had agreed to accompany the officers to the
station, was clearly an abuse of authority and nothing else. (See
Docket No. 220 at 2-4.)  The damages awarded against Plumb were
obviously based no more or no less on the pain and suffering
resulting of the blow to the stomach.

What counsel failed to recover, however, were the
damages resulting from the conduct of Officer Brame.  It was the
claims against Brame which constituted the heart of plaintiff's
case.  It was Brame who made the decision to pull plaintiff over
in the first place.  It was Brame who made the decision to place
plaintiff under arrest after failing the field sobriety tests on
the scene.  It was Brame who took plaintiff from the scene to the

---

[4] Even then, counsel was unsuccessful in obtaining an award of punitive damages against Plumb.

4

1 | CHP office. And it was Brame who made the decision to place
2 | plaintiff in the County Jail overnight. Had counsel succeeded on
3 | those claims, or any of them, plaintiff's damages might well have
4 | approached the sum he was asking the jury to award.

The court entertains no doubt that plaintiff's attorneys are highly qualified and experienced in this field and that they worked hard on this case. They were nevertheless unsuccessful in recovering on the predominating claims upon which they might have prevailed.

First, Brame based the initial stop on his claim that plaintiff's car appeared to be weaving and going too slow. However, the video did not show all that clearly that plaintiff's vehicle was weaving, and 55 mph was not necessarily too slow under the circumstances. The stop occurred on a stretch known as the Marconi curve, which is generally thought to be dangerous because vehicles do not move slow enough. Moreover, it was brought out, almost in passing, that Brame's decision to stop and cite plaintiff may have been motivated by his understanding that he was expected to meet a quota of citations in that area. Had counsel been more emphatic in cross examination and argument on those points, and convinced the jury that there were insufficient grounds for the stop in the first place, plaintiff may have been able to recover damages for everything that happened thereafter.

Second, Brame seemed to think that taking plaintiff to the CHP office for further testing was a part of the initial detention. In fact, under the court's instructions it was more than a detention; it was an <u>arrest</u>, for which probable cause was required. In the court's opinion, that fact was never clearly

articulated to the jury, either in cross examination of Brame, in the testimony of other witnesses, or in argument. Had that been made clear to the jury, Brame would have had a hard time articulating probable cause for an arrest since plaintiff tested negative for alcohol and both his driving and his failure to pass the field sobriety test could be explained by his disability.

Third, the reason plaintiff was held in the County Jail until 1:00 a.m. was never explained. Had that been explored further, and had some inference been raised that Brame played a role in that decision, plaintiff might have recovered damages for his humiliating and frightening experience of being held for hours in a tank with drug dealers and other criminals while everyone but him seemed to be being processed out earlier.

So it was that the principal defendant, against whom plaintiff's attorneys expended the bulk of their time and efforts both before and during trial, escaped liability altogether, and plaintiff recovered nothing on the claims which could have yielded the bulk of the damages plaintiff sought. While plaintiff was a prevailing party under the law, no one with any familiarity with the case could have considered the outcome a major victory for plaintiff.[5]

It was primarily for those reasons discussed above that the court concluded that plaintiff's attorneys had limited success on their claims. The court had in its original order

---

[5] It might be said that the greatest victory for plaintiff's side was the recovery of attorneys' fees. As it is, the court is awarding plaintiff's attorneys over $300,000 in fees and expenses for recovering less than half that sum for their client.

6

reduced the fee award by 45% due to that limited success. In order to give effect to the Court of Appeals' decision, and to eliminate any consideration of the argument that the verdict would not meaningfully deter future violations by other officers, upon reconsideration, the court will now reduce the lodestar by only 40%. After reducing the lodestar figure of $423,575 by 40%, plaintiff is entitled to $254,145 in attorney's fees.

This court's prior order granting attorney's fees awarded $30,360 to plaintiff for "fees on fees," e.g., the attorney's fees incurred drafting the original request for attorney's fees, and $28,676.57 for expenses.[6] (Docket No. 203 at 31-37.) The Ninth Circuit found no error with these amounts, and this court incorporates by reference its prior discussion granting these fees and expenses. Plaintiff is therefore entitled to $30,360 for fees on fees and $28,676.57 for expenses.

Plaintiff also requests $55,555 in fees for 99.75 hours of his counsel's work after the Ninth Circuit's remand. However, given the limited remand by the Ninth Circuit, there is no reason why plaintiff's counsel should have spent almost 100 hours working on this case after the remand. Indeed, it appears that the vast majority of this time was spent seeking to relitigate the entire fee award, rather than addressing the court's

---

[6] The court's prior order reduced the award for expenses 25% based on plaintiff's limited success, explaining that "[a]lthough all of plaintiff's claims arose from a single incident, the trial definitely would not have lasted as long as it did if plaintiff had not pursued his unsuccessful claims against Brame and the CHP or challenged the arrest for driving under the influence." (Docket 203 at 36-37.) The court sees no reason to change this finding.

7

reduction of the lodestar amount based in part on the court's determination that a fee award would not meaningfully deter future violations by other officers.[7]

The court declines to award fees for time spent by plaintiff's counsel addressing issues other than the deterrent effect of a fee award. Plaintiff's briefing does not specify what time was spent addressing the deterrent of effect of a fee award, and therefore the court cannot determine what fees were incurred addressing the deterrent effect. However, the court estimates that plaintiff's lead counsel (either Pearl, Haddad, or Sherwin) should have spent no more than 10 hours on this case after remand, given the limited scope of the remand. Taking the $400 hourly rate previously determined by the court for plaintiff's lead counsel plus a $30 enhancement for the increase in plaintiff's lead counsel's rates since 2015, the court will award an additional $4,300 for fees on fees on remand.[8]

In sum, the court will award $317,481.57 in attorney's fees and expenses, calculated as follows:

| | |
|---|---|
| Lodestar: | $ 254,145.00 |
| Fees on Fees (prior to appeal) | $ 30,360.00 |
| Fees on Fees (on remand) | $ 4,300.00 |

---

[7] The court reiterates that most of the arguments plaintiff raises now were already raised in plaintiff's original request for attorney's fees and on appeal, and this court previously found that allowing 75.9 hours of work was "more than adequate" for the initial fee motion. (Docket No. 203 at 33.)

[8] Plaintiff was also awarded attorney's fees on appeal by the Ninth Circuit and plaintiff's motion for attorney's fees was referred to the appellate commissioner for determination of an appropriate amount of fees. That motion appears to be still pending.

8

| | | |
|---|---|---|
| Expenses: | | $  28,676.57 |
| TOTAL AWARD: | | $ 317,481.57 |

IT IS SO ORDERED.

Dated: October 2, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE